**PPG INDUSTRIES, INC., Plaintiff,**

v.

**BASF CORPORATION and Stanley Hiltenbeitel, Defendants.**

Civ. A. No. 90–1111.

United States District Court, W.D. Pennsylvania.

Sept. 25, 1990.

Richard L. Mayer & Scott Kenyon & Kenyon, New York City, David L. Tungate, Eckert Seamans Cherin & Mellott, Pittsburgh, Pa., for defendants.

M. Richard Dunlap, Dickie, McCamey, Chilcote, Pittsburgh, Pa., for plaintiff.

## MEMORANDUM

KENNETH J. BENSON, United States Magistrate.

Before the court is a motion for protective order filed by plaintiff PPG Industries, Inc. The motion has been fully briefed, both *pro* and *contra* and capably argued by both parties; it is ripe for disposition. The issues presented by the motion are best understood in the light cast by the lawsuit as a whole; it is appropriate, therefore, to undertake some discussion of the factual and procedural background as it appears from the record.

### 1.

PPG is a corporate entity which engages in various commercial pursuits among which is research, development, manufacturing and sale of coatings used in connection with steel or aluminum containers, *viz.* soft drink and beer cans. PPG alleges that in 1977 it discovered a process, involving the proper use of a certain secret chemical material, which increased the adhesion of its exterior container coatings. This discovery is said to be extremely important and valuable because it enabled PPG's coatings to pass certain customer qualification tests, including the pasteurization test of American National Can Company, a major user of the product.

The co-inventors, or co-discoverers, of the allegedly new process were Kris M. Kazik and David W. Kuhns. In 1977, at the time of the asserted discovery, both men were employees of PPG. The pleadings inform us that a decision was made by PPG in 1977 not to patent the discovery but rather to maintain its confidentiality as a trade secret. The commercial advantage inuring to PPG as a result of its discovery was significant: between 1977 and 1986, PPG's sales of container coatings more than doubled. And PPG asserts that during this period, that is, 1977 to 1986, it successfully maintained the confidentiality of its trade secret.

Prior to 1984, defendant Hiltenbeitel was employed by Inmont Corporation (which is now a division of defendant BASF Corporation). Apparently Inmont was in competition with PPG in respect to the manufacture and sale of container coatings, although PPG alleges that Inmont's product was inferior to its own and notes that Inmont's coatings could not pass the pasteurization test referred to above. While he was employed by Inmont, defendant Hiltenbeitel worked in its container coating area.

In 1984, Hiltenbeitel resigned his position with Inmont and accepted a position of responsibility with PPG. Hiltenbeitel signed an Employee Agreement with PPG at the time he entered its employ, a component of which was an undertaking not to disclose "to any person without the Company's written consent, either during or subsequent to my employment, any of the Company's trade secrets or other confidential information." Within a week of his commencing employment with PPG, defendant Hiltenbeitel learned the asserted trade secret which is the subject of this lawsuit.

In March, 1986, defendant Hiltenbeitel resigned his position with PPG and reentered the employ of Inmont; once again Hiltenbeitel was assigned to Inmont's exterior container coating area.

The complaint alleges that in 1986, when Hiltenbeitel reentered its employ, Inmont (BASF) produced container coatings which were inferior to PPG's. BASF's coatings, for example, continued to fail the pasteurization test. After Hiltenbeitel rejoined BASF, however, BASF's coatings showed a marked improvement in adhesion capability. BASF experienced a growth in sales, including some customers who had previously purchased their coatings from PPG. PPG alleges that chemical analyses of BASF's coatings revealed the presence of certain constituents consistent with the use of PPG's trade secret.

These facts comprise the basis of the instant lawsuit, wherein PPG charges defendant Hiltenbeitel with breach of contract; both Hiltenbeitel and BASF with misappropriation of trade secrets; and BASF with unjust enrichment and interference with contractual relations.

2.

As noted above, the co-inventors of PPG's trade secret are Kris M. Kazik and David W. Kuhns. At the time of their invention, both men were employed by PPG; Mr. Kuhns is still so employed. Both men signed Employee Agreements with PPG which are said to be identical to the agreement signed by defendant Hiltenbeitel, which, in pertinent part is quoted above. Mr. Kazik, however, left the employ of PPG "some years ago," by the account of both parties. The parties are unsure whether Mr. Kazik has had one or two (or, presumably, more) intervening employers, but it is not disputed that he now is employed by defendant BASF. He is not a party to this lawsuit, and nothing in the record, or in the presentations of counsel, imputes to him any wrongdoing.

Defendants BASF and Hiltenbeitel (BASF's employee) are represented in this litigation by the law firms of Kenyon & Kenyon in New York, and Eckert Seamans Cherin & Mellott in Pittsburgh. On August 7, 1990, counsel for PPG wrote to one of defendants' Kenyon & Kenyon attorneys. The letter disclosed the writer's understanding that Mr. Kazik is now employed by BASF and related the writer's view that Kazik was bound by his agreement with PPG to keep confidential his knowledge of the trade secret. The letter also directed the reader's attention to Rule 4.2 of the Pennsylvania Rules of Professional Conduct. Finally the letter instructed defense counsel that PPG withheld consent "for you or anyone on your behalf to communicate with Mr. Kazik concerning the subject of this lawsuit." The response elicited by PPG's letter was dated August 21, 1990, and was brief. It denied the applicability of Rule 4.2; it asserted that Mr. Kazik is "our client"; and it pledged that "all confidential information will be dealt with in the proper manner."

One final fact must be recounted, and it is particularly relevant to defense counsel's third representation, above. On August 8, 1990, that is, after PPG's letter to defense counsel but prior to the latter's response, a consented-to protective order was filed. The protective order is highly specific and will not be restated here other than to say that by its terms the parties agreed to maintain the confidentiality of "properly designated" information "provided by one party to the other party or parties during discovery...."

Unsatisfied with defense counsel's August 21, 1990, letter, and unpersuaded of the efficacy of the protective order in this context, PPG has moved for a protective order "to prevent or limit *ex parte* contact with witness." Particularly, PPG seeks an order preventing counsel for BASF and Hiltenbeitel from having any *ex parte* communication with Kris M. Kazik, or in the alternative, limiting any *ex parte* communications to subjects other than Mr. Kazik's knowledge of PPG's trade secrets.

3.

PPG bases its argument on Rule 4.2 of the Pennsylvania Rules of Professional

Conduct.[1] That rule (which is a restatement *verbatim* of Rule 4.2 of the Model Rules of Professional Conduct) states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

If this were all that was in contest, the question presented would answer itself. Insofar as defense counsel is concerned, Mr. Kazik is not "represented by another lawyer in the matter": the literal prohibition in Rule 4.2 is simply not applicable. But, of course, the dispute does not end with a literal reading of the Rule.

In respect to an "organization[al]", *e.g.*, corporate, party, the Comment to Rule 4.2 informs that

> ... this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Analysis of the Comment discloses that the commentator envisions a prohibition of *ex parte* contact when one of three situations exists. First, *ex parte* communication is forbidden with "persons having managerial responsibility on behalf of" the corporate party. The use of the present tense "having," together with the ineluctable logic of such an extension, persuades me that this prohibition is in respect to current employees only. It does not apply to the present circumstance.

Second, the Comment contemplates a bar to *ex parte* communications with one whose "act or omission in connection with [the matter in suit] may be imputed to the [corporate party] for purposes of ... liability." This, it seems, plainly may apply to present or former employees of the corporate party. The situation addressed by this prohibition, it seems to me, is as follows: plaintiff sues corporation "X" for wrongful discharge, alleging that "Y", a former supervisory employee of corporation "X" actually did the firing. Even though "Y" is no longer an employee of corporation "X", it is his act which may be imputed to the corporation for purposes of its liability. The prohibition against *ex parte* communication extends to him.[2] But there is no allegation here that any act or omission by Kazik may be imputed to PPG for purposes of the latter's liability. This second circumstance contemplated by the commentator does not warrant prohibition of *ex parte* contact.

Third, the commentator would extend the prohibition to encompass persons "whose statement may constitute an admission on the part of the organization." PPG, with some vigor, denies that any statement made by Kazik will be an admission, but contends that counsel for defendants might make such an argument, and that the court *may* so hold. I view this proposition as a slender reed indeed. The Federal Rules of Evidence define an "admission" as a "statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, *made during the existence of the relationship.*" Fed.R. Evid. 801(d)(2)(D) (emphasis supplied). While I would not, even if I could (and I cannot), anticipate the court's evidentiary rulings at the time of trial, it nevertheless seems to me that the plain meaning of this rule is so irrefragably clear that, for purposes of this discovery motion, I cannot conclude otherwise: Kazik's present statements cannot be admissions by PPG.

What has gone before is a superficial analysis, it is no more than a literal reading of the Rule and the Comment while asking,

---

1. Adopted as the Rules of Professional Conduct in this court by Local Rule 22.I.B.

2. *See, Sperber v. Mental Health Center,* No. 82 C7428 (S.D.N.Y. Nov. 21, 1983) (LEXIS, Genfed library, Dist file) (withdrawn). Discussed in *The Business Lawyer;* Vol. 42, August 1987, 1068–69.

"What do the words mean?" And that analysis compels the conclusion that Kazik is not such a person, in relation to PPG, that counsel for defendants should be barred from communicating with him *ex parte.*

### 4.

But I do not think that this superficial analysis does justice to the question presented. The Code of Professional Responsibility contains a provision parallel to Rule 4.2. Disciplinary Rule 7–104(A)(1), provides, in pertinent part:

> During the course of his representation of a client a lawyer shall not ... [c]ommunicate ... on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Because the question presented here is one of ethics or professional conduct and not one concerning the operation of a rule of law or of evidence, it seems to me the better approach calls for a balancing of interests. And the components of the balancing test are these: What is the interest PPG seeks to protect, measured against the purpose of Model Rule 4.2 and its analogue, DR 7–104(A)(1)?

That PPG does not seek to protect the confidentiality of its trade secret seems to be obvious. First, the complaint alleges that PPG believes its trade secret has already been lost to it; second, counsel for PPG acknowledged at oral argument that the trade secret has been disclosed to counsel for defendants in discovery; and third, counsel for defendants represented (both in their memorandum and at argument) that they consider all information disclosed to them in respect to the trade secret to be within the scope of the previously entered protective order. Thus, if the only issue here were one of protecting the trade secret from disclosure in *ex parte* communication with Kazik, the question presented

would be resolved simply: no such protection is required.

But at argument, another interest was asserted by PPG. It was represented that during 1977 and 1978, in the aftermath of the asserted invention, certain discussions were held between counsel for PPG and employees of PPG, and that Kazik, as co-inventor, was a participant in these discussions. Among the topics discussed were the decision not to patent the invention, but rather to maintain it as a trade secret, and the reasons therefor. It is represented further that certain confidential or privileged communications passed between attorney and client in the course of those discussions. And if Kazik, now no longer PPG's employee, may be contacted *ex parte* by counsel for defendants, the confidentiality of those privileged communications may be imperilled.

Courts have not been insensitive to this concern. In *Amarin Plastics, Inc. v. Maryland Cup Corporation,* 116 F.R.D. 36 (D.Mass.1987), the district court refused to grant a motion for a protective order somewhat similar to the motion at issue here.[3] The case is relied upon by counsel for defendants, and for good reason: the court declined to find that DR 7–104(A)(1) prohibited the contact in the absence of an "ongoing agency or fiduciary relationship" between the witness and his former employer. *Id.,* 116 F.R.D. at 40. But the court denied the motion for protective order without prejudice because it was concerned about the possible breach of the attorney-client privilege. "If [the movant] can demonstrate, either by a deposition transcript or other evidence, that [opposing counsel] sought in any way to cause [the witness] to divulge confidential attorney-client communications ..., that conduct might well constitute ... abusive conduct...." *Id.* at 42.

The United States District Court for the Eastern District of Pennsylvania appears recently to have recognized the principle discussed in *Amarin Plastics* while de-

---

**3.** The *Amarin Plastics* motion sought to prevent the use at deposition or at trial of information which had been obtained during *ex parte* communications between counsel and opposing party's former officer and director; here PPG seeks to protect against the *ex parte* communication in the first instance.

clining to protect the communications. *In re Tire Workers Asbestos Litigation*, 125 F.R.D. 617 (E.D.Pa.1989). The *Tire Workers Asbestos* court acknowledged that the attorney-client privilege might prevent the discovery of some communications but refused to find the privilege existed where it was not clear the communication was made "in confidence by the client to counsel for the purpose of obtaining legal advice." *Id.* at 621.

While Kazik was employed by PPG, he *was* PPG within the meaning of Rule 4.2 and DR 7–104(A)(1); that is, if he were still PPG's employee he would be a "party" within the contemplation of those provisions. Thus, conversations between PPG personnel and PPG's counsel in which Kazik participated were within the attorney-client relationship; communications made during such conversations may be privileged.[4]

But although the privilege may be real, and though it is a consideration to which the court ought not to be insensitive, it does not silence Kazik.

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>
>> '[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'
>
> *Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981), *quoting Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962).

Rule 4.2 and DR 7–104(A)(1) are both designed "to prevent situations in which an adverse counsel may take advantage of a represented party by encouraging that party to make binding statements or admissions she or he would not otherwise make on the advice of counsel that the represented party has elected to retain and therefore is entitled to consult." *In re Industrial Gas Antitrust Litigation*, No. 80–C3479 (N.D.Ill., E.Div., November 22, 1985). The countervailing consideration is that attorneys ought to be permitted "to conduct informal discovery in cases with employer party-opponents." *Oak Industries v. Zenith Industries*, No. 86–C4302, 1988 WL 79614 (N.D.Ill., E.Div., July 25, 1988). Because Kazik has been held not to be a "party" within the contemplation of the Rules, the countervailing consideration prevails. And although PPG's interest in maintaining prior attorney-client confidences is real, that interest does not silence Kazik; it circumscribes one, and only one, area of discourse.

A court does no good service when it ignores the "real-life" facts behind the question of law before it. And a prominent "real-life" fact in this case is that Kazik is not now employed by PPG; he is an employee of defendants. Although not a nominal party to this action, his interests must assuredly be with defendants. Defendants and their counsel have a right to conduct informal discovery, to prepare to defend themselves in this action. Subject only to one proscription, defendants and their counsel must be allowed to confer with their employee.

The interests of both parties can be vindicated in the following way: prior to their initial meeting with Kazik, counsel for defendants shall provide him with a copy of this memorandum and instruct him to read it. At the beginning of each meeting with Kazik, defendants and/or their counsel shall advise Mr. Kazik that he may not disclose to them any prior communications between himself and counsel for PPG. Aware, as they must be, of the *Upjohn* distinction between the disclosure of *facts*,

---

**4.** "Again, the attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1361 n. 7 (9th Cir.1981).

which is permitted, and of *communications*, which is privileged, defendants and their counsel will *not* seek the disclosure of any privileged matter. There is nothing in the record which calls into question defendants' or counsel's good faith in this matter or which creates any doubt that the within compromise resolution of the motion for protective order can be effectuated.