**Joseph HANNTZ, Plaintiff,**

v.

**SHILEY, INC. A DIVISION OF PFIZER, INC., and Pfizer, Inc., Defendants.**

**Civ. A. No. 90–3156.**

United States District Court,
D. New Jersey.

May 30, 1991.

G. Richard Malgran and Lee A. Emmer, Rubin, Rubin, Malgran & Kuhn, Piscataway, N.J., for plaintiff.

Myron J. Bromberg, Lauren E. Handler, Cynthia D. Richardson, Porzio, Bromberg & Newman, Morristown, N.J., for defendants.

## OPINION

LECHNER, District Judge.

Currently before the court is the appeal of plaintiff from a discovery order (the "Order") of United States Magistrate

Judge Ronald J. Hedges, filed 31 January 1991.[1] For the reasons set forth below, the Order is reversed.

*Facts and Procedural History*

This is a product liability action brought by plaintiff against defendants Shiley, Inc., a Division of Pfizer, Inc. ("Shiley") and Pfizer, Inc. ("Pfizer") (collectively, "Defendants"). The complaint ("Complaint") was filed on 6 July 1990 in the superior court of New Jersey, Middlesex County. On 9 August 1990, the Complaint was removed from the superior court. The Defendants are the designers, distributors and manufacturers of allegedly defective heart valves which were surgically implanted in plaintiff.

Plaintiff alleges he underwent heart valve replacement surgery on 22 February 1985. Complaint, ¶ 1. The two artificial heart valves (the "Shiley Valves") he received at that time were designed, distributed and/or manufactured by the Defendants. Plaintiff alleges the Shiley Valves subsequently malfunctioned, requiring additional surgery on 4 August 1988 to replace the malfunctioning valves. *Id.*, ¶ 2. Plaintiff alleges the second surgical valve replacement operation resulted in a cardiovascular accident which left him permanently paralyzed and debilitated. *Id.*, ¶ 3.

During the course of discovery, plaintiff was provided with a list of current and former employees of Shiley who were involved in the manufacture, assembly, inspection and packaging of the Shiley Valves implanted into plaintiff. On or about 27 December 1990, plaintiff's counsel contacted one of the former employees in an effort to obtain information relevant to plaintiff's suit.

Subsequently, plaintiff's counsel learned of the decision in *Public Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 745 F.Supp. 1037 (D.N.J.1990) ("*PSE & G* "), which prohibited *ex parte* communications with the former employees of an adverse party corporation. Plaintiff also learned of a decision in *Curley v. Cumberland Farms, Inc.*, slip op. No. 86–5057 (16 Nov. 1990) (Simandle, U.S.M.J.), *aff'd*, 134 F.R.D. 77 (D.N.J.1991), which permitted *ex parte* communications with former nonmanagerial employees of an adverse corporation. Because of the differing holdings as to the propriety of *ex parte* communications with former employees, plaintiff's counsel refrained from making further contact with former Shiley employees. Instead, plaintiff sought a ruling from Magistrate Judge Hedges on the question of whether plaintiff's counsel could communicate, *ex parte*, with former Shiley employees.

On 31 January 1991, Magistrate Judge Hedges filed the Order. The Order provides, in pertinent part:

. . . [T]hat plaintiff may contact former employees of defendants, pursuant to the following guidelines:

1. Plaintiff shall provide in writing a list of names of former employees with whom plaintiff expects to conduct interviews at least two business days prior to initiating contact with former employees.

2. Defendants may review the list for names of employees w[h]o have previously been contacted by counsel for defendants and may contact said employees prior to plaintiff's anticipated contact. Defendants shall inform counsel for plaintiff of such prior contact by counsel for defendants. Plaintiff may not contact employees so identified by defendants without giving additional prior notice to plaintiffs.

---

**1.** Plaintiff has submitted the following for consideration: Brief of Plaintiff in Support of Plaintiff's Appeal of Magistrate Hedges' January 31, 1991 Discovery Order; Affidavit of Lee Emmer, Esq. ("Emmer Affidavit"); Plaintiff's Reply Brief to Defendants' Opposition to Plaintiff's Appeal.

Defendants have submitted the following: Brief of Defendants in Opposition to Plaintiff's Appeal of Magistrate Hedges' January 31, 1991 Discovery Order; Certification of Cynthia D. Richardson, Esq.

3. Plaintiff shall not interview any former employee of defendants unless a letter is sent to said employee delineating the nature of the lawsuit and the purpose of the requested interview. (see full text of the letter annexed hereto as Exhibit "A".)

4. Plaintiff shall afford defendant[s] the opportunity to attend any interviews with former employees scheduled by plaintiff, including telephone interviews. Defendants shall notify plaintiff of their intent to attend any such interviews at least one business day prior to plaintiff's stated intended contact with said employees.

5. Nothing herein precludes any party from obtaining a deposition under oath from any of these persons upon due notice to all counsel in accordance with the Federal Rules of Civil Procedure and within the deadline for concluding factual discovery in the case....

Order at 1–3.[2]

Magistrate Judge Hedges ruled counsel could not communicate with any former employees of a corporate adversary without permitting the corporation, through counsel, to be part of such communication. Plaintiff now seeks to have the Order overruled.[3] Plaintiff fears that Exhibit A to the Order and the requirement of the presence of Defendants' counsel will chill the former employees from revealing relevant factual information. Emmer Affidavit, ¶ 11.

**2.** Exhibit A to the Order reads substantially as follows:

[Rubin, Rubin, Malgran & Kuhn Letterhead]
(Date)
(Address)
Re: Joseph Hanntz v. Shiley, Inc. and Pfizer, Inc.
Dear _____ ·

I am an attorney who has been retained by an individual who has brought a lawsuit against your former employer. The lawsuit concerns allegations by my client that he sustained personal injuries as a result of being implanted with two Ionescu–Shiley Heart Valves which we claim were defective.

In connection with the lawsuit, I am attempting to gather information about the manner in which Ionescu–Shiley Heart Valves were manufactured. For that reason, I would like to interview you. A federal court has ordered that you be given the information contained in this letter so that you can decide whether you would be willing to speak with me about any facts you might have concerning this case.

You have no obligation to agree to an interview. On the other hand, there is nothing that prevents you from agreeing to be interviewed. Whether or not you agree to an interview, you may be asked to give testimony in this case. If you do not wish to testify voluntarily, a subpoena may be sought to compel your testimony. We would obviously prefer an informal interview.

Lawyers for Shiley Incorporated are willing to answer any questions you may have about this request for an interview. In addition, a lawyer representing Shiley will be present at the interview, should you agree to be interviewed. In the event you are subpoenaed to testify, Shiley is willing to provide a lawyer to represent you. If you wish to contact the lawyers who represent Shiley Incorporated, you may call Porzio, Bromberg & Newman, P.C. at (201) 538–4006 and ask to speak with Myron Bromberg, Lauren Handler or Cynthia Richardson. However, you are under no obligation to do so.

If you are agreeable to an interview with me, please fill out the enclosed form which indicates your telephone number and a date and time when I could contact you be telephone. Your signature on the form will mean you have voluntarily agreed to be interviewed.

Very truly yours,
LEE A. EMMER
LAE:lmd
encs.
cc: Porzio, Bromberg & Newman, P.C.
Order, Exhibit A.

**3.** In addition, plaintiff seeks a stay of discovery pending Third Circuit review of the decision in *PSE & G.* The application to certify the decision in *PSE & G* for interlocutory appeal has, however, been denied. *See PSE & G,* slip op. No. 88–4811 (D.N.J. 18 Mar. 1991). Accordingly, there is no basis for a stay.

Plaintiff also seeks to appeal an order, filed 25 February 1991, denying a prior motion to stay discovery pending an appeal of the Order. Plaintiff argues his appeal of the Order should be heard because it was timely filed. Indeed, the posture plaintiff takes on the pending motion is that his prior appeal of the Order was denied. In a letter to the parties, dated 13 March 1991, Chambers informed the parties the 25 February order which denied a stay did not address the merits of the appeal of the Order. Accordingly, there is no need to consider plaintiff's motion with respect to the 25 February order.

## Discussion

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure and Rule 40(A) of the General Rules of the United States District Court for the District of New Jersey (the "General Rules"), a United States Magistrate Judge may hear "dispositive" and "nondispositive" motions assigned by the district court. Section 636(b)(1) states a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions." 28 U.S.C. § 636(b)(1).

With regard to nondispositive motions, "the district court may modify the magistrate[ ] [judge's] order only if the district court finds that the magistrate[ ] [judge's] ruling was clearly erroneous or contrary to law." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1113 (3d Cir.1986), cert. denied, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). With respect to dispositive motions, the district court must make a de novo determination of those portions of the magistrate[ ] [judge's] report to which a litigant has filed an objection. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(a); General Rule 40(D)(5); see United Steelworkers of Am. v. New Jersey Zinc Co., 828 F.2d 1001, 1005 (3d Cir.1987).

■ The clearly erroneous or contrary to law standard of review is applicable here because the order appealed from relates to a non-dispositive discovery matter. "A finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J.1990) (quoting United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); see Environmental Tectonics Corp. v. W.S. Kirkpatrick & Co., 659 F.Supp. 1381, 1398 (D.N.J.1987), aff'd in part, rev'd in part, 847 F.2d 1052 (3d Cir.1988), aff'd, 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). In the context of discovery matters, a magistrate judge's finding "is entitled to great deference and [is] reversible only for an abuse of discretion." Dome Petroleum, 131 F.R.D. at 65; see Environmental Tectonics, 659 F.Supp. at 1399.

### B. Communications with Former Employees

#### 1. Governing Law

■ As a preliminary matter, it is noted federal courts may regulate, in an exercise of their inherent power, the conduct of attorneys appearing in federal court. In re Snyder, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985). The United States District Court for the District of New Jersey, in exercising that inherent power, has decided "The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law." Rule 6(A), General Rules of the United States District Court for the District of New Jersey.

The supreme court of the State of New Jersey has adopted, as modified, the Rules of Professional Conduct promulgated by the American Bar Association. See Rules Governing the Courts of the State of New Jersey, Rules of General Application, Rule 1:14 & Note; see also id. at Appendix (Rules of Professional Conduct, adopted effective 10 September 1984).

#### 2. Rule of Professional Conduct 4.2

The relevant Rule of Professional Conduct ("RPC") as adopted by the New Jersey supreme court is RPC 4.2, which provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has

the consent of the other lawyer or is authorized by law to do so.

RPC 4.2.[4]

Courts have struggled with whether RPC 4.2 permits *ex parte* communications with former employees of an adverse party corporation. One court has held RPC 4.2 proscribes any *ex parte* communications with any former employees. *See, e.g., PSE & G,* 745 F.Supp. at 1039. Other courts have held RPC 4.2 does not apply to former employees and so any former employee may be contacted. *See, e.g., University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa.1990); *Siguel v. Trustees of Tufts College,* Fair Empl.Prac.Cas. (BNA) 697, 700, 1990 WL 29199 (D.Mass.1990) (under DR 7–104); *United States v. Western Elec. Co.,* 1990–1 Trade Cas. (CCH) ¶ 68,939, 1990 WL 39129 (D.C.Cir.1990); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 629 (S.D.N.Y.1990) (under DR 7–104); *Niesig v. Team I,* 76 N.Y.2d 363, 369, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) (under DR 7–104); *DiOssi v. Edison,* 583 A.2d 1343, 1345 (Del. S.Ct.1990); *Wright v. Group Health Hosp.,* 691 P.2d 564, 569 (Wash.S.Ct.1984) (*en banc*) (under DR 7–104).

Courts have also fallen between the two positions. Some courts have held RPC 4.2 permits *ex parte* communications with certain low-level, non-managerial or non-control group former employees. *See, e.g., Porter v. Arco Metals Co.,* 642 F.Supp. 1116, 1118 (D.Mont.1986); *Bobele v. Superior Court,* 199 Cal.App.3d 708, 245 Cal. Rptr. 144, 147 (1988). Still other courts have held former managerial or control group employees may be contacted so long as none of the information divulged will be imputed to the corporation. *See, e.g., Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77, 82–83 (D.N.J.1991); *PPG Indus., Inc. v. BASF Corp.,* 134 F.R.D. 118, 121, 122 (W.D.Pa.1990); *In re Home Shopping Network, Inc. Sec. Litig.,* [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,950, 1989 WL 201085 (M.D.Fla.1989); *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 39–41 (D.Mass.1987) (under DR 7–104).

An examination of RPC 4.2, the purposes and policies behind RPC 4.2 and the relevant authorities indicates RPC 4.2 permits counsel to communicate with and interview any former employees of a corporate adversary. This conduct is permitted regardless of whether the former employees were managerial or control employees at the time of their employment, except to the extent a privilege held by the former employee or the corporation would be breached.[5] Counsel may not communicate with any former employees who are current agents of Defendants such that the former employees' statements could be considered admissions of the Defendants.

#### a. *The Position of the New Jersey Courts*

Although the District Court for the District of New Jersey is to follow the RPCs as revised by the New Jersey supreme court, that court did not revise or explicate RPC 4.2. The New Jersey supreme court adopted RPC 4.2 without comment. *See* RPC 4.2 Comment ("As recommended by

---

**4.** RPC 4.2 is substantially identical to Model Code of Professional Responsibility DR 7–104(A)(1), which provides:

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
*Id.*

**5.** Two courts in this district have ruled on this issue and reached differing results. *Compare PSE & G,* 745 F.Supp. at 1039 (no *ex parte* contacts permitted with any former employees)

with *Curley,* 134 F.R.D. at 82–83 (*ex parte* contacts with former managerial employees permitted unless information obtained is imputed to the corporation). The decision of one court within a district, however, is not binding upon another court within the same district. *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991); *Curley,* 134 F.R.D. at 86–87. Consequently, independent review of this issue is warranted.

This opinion should not be construed to address whether plaintiff may contact, *ex parte,* the current non-managerial or non-control group employees of Defendants. The issue discussed in this opinion is strictly limited to former employees.

the Debevoise Committee, the Court has adopted ABA Model Rule 4.2."). Moreover, no supreme court decision speaks to this issue. A New Jersey superior court decision, however, provides some guidance. *See New Jersey v. CIBA–GEIGY Corp.*, 247 N.J.Super. 314, 589 A.2d 180 (1991).

In *CIBA–GEIGY*, the superior court held RPC 4.2 permits *ex parte* communications with all current employees except those "whose acts or omissions in the matter under inquiry are binding on the corporation ... or imputed to the corporation for purposes of liability, or employees implementing the advice of counsel." *Id.* at 325, 589 A.2d at 185 (adopting formulation in *Niesig*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030). The superior court reached this conclusion after balancing the judicial policy of construing privileges narrowly against the need to insulate the corporation from harm caused by statements of current employees which would be binding on the corporation. *CIBA–GEIGY*, 247 N.J.Super. at 325, 589 A.2d at 185.

The superior court was not faced with the question of whether RPC 4.2 applies to former employees. The superior court did note, however, that former employees would only rarely, if ever, be able to make statements which would bind the corporation or be admissible as admissions of the corporation. *Id.* at 325, 589 A.2d at 185. Moreover, the superior court noted it was adopting the same interpretation of RPC 4.2 as the New York court of appeals adopted in *Niesig*. *CIBA–GEIGY*, 247 N.J. Super. at 326, 589 A.2d at 185. In *Niesig*, the New York court of appeals held DR 7–104(A)(1) does not apply to former employees. 76 N.Y.2d at 369, 559 N.Y.S.2d 493, 558 N.E.2d 1030. It appears the New Jersey superior court has at least recognized RPC 4.2 should not be applied to former employees.

### b. *The Position of the American Bar Association*

The Standing Committee on Ethics and Professional Responsibility of the American Bar Association (the "Standing Committee") has taken the position RPC 4.2 does not apply to former employees. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91–359 (1991), *reprinted in* 103 Law.Man. on Prof. Conduct (ABA/BNA) 901:140 ("Formal Op. 91–359"). After acknowledging the cases and commentaries which apply RPC 4.2 to former employees and which argue for restricting *ex parte* communications with former employees, the Standing Committee stated: "[T]he fact remains that the text of [RPC 4.2] does not do so and the comment gives no basis for concluding that such coverage was intended." *Id.* at 901:143. The Standing Committee was swayed by the fact that restricting communications with former employees would "inhibit the acquisition of information." *Id.* at 901:143–44.

In ruling RPC 4.2 does not apply to former employees, the Standing Committee cautioned that counsel who communicated with a former employee may not seek any information which might violate the corporation's attorney-client privilege. *Id.* at 901:144. In addition, the Standing Committee noted RPC 4.3 governs the attorney's conduct in dealing with unrepresented individuals.[6] *Id.* Accordingly, the Standing Committee stated counsel conducting an *ex parte* interview of a former employee must clearly disclose to the former employee (1) counsel's role in the matter, (2) the identity of counsel's client and (3) the fact that the former employer is a party adverse to counsel's client. *Id.*

The Standing Committee correctly points out RPC 4.2, by its very terms, does not apply to former employees. Indeed, the language of RPC 4.2 suggests only parties are covered by the prohibition against *ex*

---

6. RPC 4.3, as adopted by the supreme court of New Jersey, provides:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When a lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

*Id.*

*parte* communications because RPC 4.2 by its terms is limited to parties. RPC 4.2 ("a lawyer shall not communicate ... with a party"). Therefore, taken literally, RPC 4.2 does not apply to former employees because they could not be parties unless they were named as such. This limitation to actual parties is significant when considered in light of the purposes behind RPC 4.2.

### c. *The Purposes of RPC 4.2*

■ RPC 4.2 has several purposes. First and foremost, RPC 4.2 prevents a represented party from being overwhelmed by opposing counsel in the absence of friendly counsel. *Wright,* 691 P.2d at 567; Miller & Calfo, *Ex Parte Contact with Employees and Former Employees of a Corporate Adversary: Is It Ethical?,* 42 Bus.Law. 1053, 1054 (1987); Comment, *Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest,* 82 Nw.U.L.Rev. 1274, 1277 (1988). RPC 4.2 presumes laypersons involved in an adversarial matter may be susceptible to manipulation by opposing attorneys and therefore attempts to neutralize that susceptibility by requiring the presence of friendly counsel. *Wright,* 691 P.2d at 567; Formal Op. 91–359 at 901:141; 2 G. Hazard & W. Hodes, The Law of Lawyering 730 (2d ed. 1990). RPC 4.2 is designed to prevent trickery or other conduct intended to induce the represented party to somehow impair, compromise or settle his or her own case. *See* Leubsdorf, *Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interests,* 127 U.Pa.L.Rev. 683, 686–87 (1979) (discussing DR 7–104). In this respect, RPC 4.2 preserves the posture of the parties in an adversarial system.

In addition, RPC 4.2 prevents the disruption of the attorney-client relationship by opposing counsel. *Wright,* 691 P.2d at 567; Miller & Calfo, *supra,* at 1054 & 1054 nn. 4–6. RPC 4.2 maintains the proper roles of parties and counsel and prevents opposing counsel from interfering with the effectiveness of the adversary's attorney-client relationship. Miller & Calfo, *supra,* at 1053–55. In essence, RPC 4.2 preserves the protections obtained by retaining counsel. G. Hazard & W. Hodes, *supra,* at 730.

The primary concerns of RPC 4.2, however, are only remotely, if ever, implicated in the situation of a former employee. RPC 4.2 prevents an attorney from overreaching and communicating "with a party the lawyer knows to be represented by another lawyer...." *Id.* The adversarial system, of course, is called into play only in the context of adverse parties. When an individual is not a party, he or she is not adverse in the sense that his or her interests are at stake in the litigation. The former employee would not be in a position to be unduly influenced into a settlement because it is not his or her case to settle. Consequently, the adversarial system is only tangentially involved when there are *ex parte* communications with former employees.

■ Similarly, allowing counsel to communicate *ex parte* with the former employees of a corporation does not always implicate the attorney-client relationship between the corporation and its counsel. *Polycast,* 129 F.R.D. at 625; G. Hazard & W. Hodes, *supra,* at 738. Ordinarily, it cannot be assumed the corporation's counsel represents the former employees. *Polycast,* 129 F.R.D. at 625. Indeed, the mere fact an individual is a former employee suggests he or she is unlikely to have a continuing relationship with either the corporation or its counsel. In addition, a former employee could certainly reveal factual matters which potentially could result in liability of the corporation. The revelation of damaging facts, however, does not implicate the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981).

Applying RPC 4.2 to former employees serves neither primary purpose of RPC 4.2. Moreover, proscribing *ex parte* communications with former employees would unnecessarily constrict Rule 26 of the Federal Rules of Civil Procedure, which broadly defines the scope of discovery. *See Poly-*

*cast*, 129 F.R.D. at 628. Because RPC 4.2 refers only to represented parties and because the purposes of RPC 4.2 would not be served by an interpretation otherwise, it cannot be said that RPC 4.2 applies to former employees who are not parties. The relevant inquiry then is whether any of the other ways in which RPC 4.2 has been extended to former employees has any merit.

### d. *Commentary to RPC 4.2*

Some courts have taken the approach that the comment (the "Comment") to RPC 4.2 indicates RPC 4.2 should be extended to former employees.[7] The Comment, like RPC 4.2, does not explicitly address former employees. The Comment states, in pertinent part:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statements may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

RPC 4.2 at Comment.

The commentary to RPC does nothing more than define who may be considered a party to a suit. The Comment is primarily concerned with setting the parameters within which the current employees of a corporation will be deemed to be parties to a suit involving the corporation. *Cf. Upjohn*, 449 U.S. 383, 101 S.Ct. 677 (determin-

ing which corporate employees are embraced by the attorney-client privilege of the corporation). It includes within the definition of party one who either (a) has managerial responsibility or (b) holds a position such that his conduct could be imputed to the corporation or whose statements would constitute admissions of the corporation. *Id.* Other courts have assumed these standards govern former as well as current employees. *See, e.g., Curley*, 134 F.R.D. at 80–83; *PPG*, 134 F.R.D. at 121; *PSE & G*, 745 F.Supp. at 1039.

Reliance upon the tests set forth in the Comment, however, is misplaced. The court in *PSE & G*, in extending these tests to former employees, stated: "There is nothing in the text of the comment ... which indicates [these] broad categor[ies] should be limited to current employees." 745 F.Supp. at 1040. However, there is nothing in the Comment which indicates these tests should be applied to former employees.

■ The two tests set forth in the Comment are, moreover, inapposite to the issue of former employees. The first test is inapposite because a former managerial employee of a corporation cannot bind the corporation. *Siguel*, Fair Empl.Prac.Cas. (BNA) at 700. A managerial employee can bind the corporation because of his or her status as an agent of the corporation. *Cf. St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (municipality may be bound by policy-making officials); *JMB Enter. v. Atlantic Employers Ins. Co.*, 228 N.J.Super. 610, 618, 550 A.2d 764 (1988) (principal may be bound by its agent). Once the agency relationship is terminated, the former manager can no longer bind the corporation. *See Anderson v. United States*, 417 U.S. 211, 218–19 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 20 (1974) ("the declarations of an agent bind the principal only when the agent acts within the scope of his authority"). Therefore, the argument that the status of an individual as a former manage-

---

7. The New Jersey supreme court did not adopt the commentary to the RPC. *See* Rules Governing the Courts of the State of New Jersey, Rules of General Application, Introduction. The supreme court indicated, however, the commentary could be used as an interpretive guide. *Id.*

rial employee requires the application of RPC 4.2 begs the question.

The second test, as it relates to admissions, is also inapposite. The second test implicitly refers to Fed.R.Evid. 801(d)(2)(D). G. Hazard & W. Hodes, *supra*, at 734. Rule 801(d)(2)(D) provides a statement is not hearsay if it is offered against a party-opponent and it was made by the party-opponent's "agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." *Id.*

■ Significantly, the exclusion from the definition of hearsay applies only to statements made "during the existence" of the employment. *Id.* Rule 801(d)(2)(D) requires "that the declarant be both authorized and acting within the scope of employment[ ] when making an admission on behalf of the [principal]." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 194 (3d Cir.1990) (Mansmann, J., dissenting) (citing *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 n. 6 (3d Cir.1988)). Statements of a former employee, made after the employment ends, cannot be deemed admissions of the corporation because he or she is not then acting within the scope of his authority.[8] *PPG*, 134 F.R.D. at 121; *Curley*, 134 F.R.D. at 91–92; G. Hazard & W. Hodes, *supra*, at 738. Because the potential for eliciting admissions during *ex parte* communications simply does not exist, this part of the Comment's test does not argue in favor of proscribing *ex parte* communications with former employees.

Because the managerial and admissions components of the Comment have no import on the issue of former employees, most of the courts which have applied RPC 4.2 to former employees do so on the ground the statements of a former employee can somehow be "imputed" to the corporation.[9] *See, e.g., PSE & G*, 745 F.Supp. at 1040–42; *PPG*, 134 F.R.D. at 121; *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 253 (D.Kan.1988) (*in dicta*); *Amarin*, 116 F.R.D. at 40. The court in *PSE & G* therefore treated RPC 4.2 as a prophylactic rule barring any *ex parte* communications with a former employee because of the potential that such communications may elicit damaging factual evidence imputable to the corporation. 745 F.Supp. at 1042.

As noted above, however, the policies of RPC 4.2 do not justify a wholesale restriction on discovery of factual information, damaging or not. *See Curley*, 134 F.R.D. at 83 ("The courts cannot permit ethical rules to be used by a party to chill the flow of potentially harmful information...."); *Frey v. Department of Health and Human Serv.*, 106 F.R.D. 32, 36–37 (E.D.N.Y. 1985) (holding DR 7–104 does not extend to all current employees because that "would

---

**8.** The significance of the relationship between admissions of a party and RPC 4.2 or DR 7–104(A)(1) must be emphasized. In cases addressing whether *current* employees may be contacted *ex parte*, the courts which restrict such contact place much weight upon the threat that statements of current employees may qualify as admissions of the corporation. *See, e.g., B.H. v. Johnson*, 128 F.R.D. 659, 662–63 (N.D.Ill. 1989); *Morrison v. Brandeis University*, 125 F.R.D. 14, 17–18 (D.Mass.1989); *Mompoint v. Lotus Dev. Corp.*, 110 F.R.D. 414, 418 (D.Mass. 1986).

Under this approach, elimination of the threat of admissions removes much of the basis for prohibiting *ex parte* contacts with current employees. *See Frey v. Department of Health and Human Serv.*, 106 F.R.D. 32, 37–38 (E.D.N.Y. 1985). In *Frey*, the court ruled certain low level employees could not be considered agents of the corporation for purposes of Rule 801(d)(2)(D). *Id.* at 38. Because there was no threat that the statements of these employees would be admissions of the corporation, the court held Rule 801(d)(2)(D) did not justify barring *ex parte* contact with these employees. *Id.* Similarly, because the statements of former employees cannot be deemed admissions of the corporation, there is little basis for a rule precluding *ex parte* contact with former employees.

**9.** In *Curley*, the court declined to bar *ex parte* contact with former employees because there was no showing that the former employees would provide any evidence that could be imputed to the corporation. 134 F.R.D. at 81. *Accord Amarin*, 116 F.R.D. at 40. The court found the argument that the former employee would provide evidence which could be imputed to the corporation to be wholly hypothetical. *Curley*, 134 F.R.D. at 81. The court noted, however, that if the corporation could come forth with a factual basis for its assertion that evidence could be imputed to the corporation, then RPC 4.2 would bar the *ex parte* contact. *Id.* at 82.

bar plaintiff's access to a vast number of potential witnesses who might have direct knowledge" of relevant facts). To hold that RPC 4.2 prohibits any *ex parte* communications with any former employee of a corporation would require prohibiting communications with even the lowest level employees who happened to witness some part of the transaction or event at issue. *University Patents*, 737 F.Supp. at 328 ("The court is unpersuaded by plaintiff's assertion that Rule 4.2 shrouds every custodian, cafeteria worker and receptionist simply in light of their mantle as 'corporate employee.' "). The Standing Committee has agreed that RPC 4.2 should not be interpreted to inhibit discovery: "Where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text to [RPC 4.2] and its Comment, to expand its coverage to former employees by means of a liberal interpretation." Formal Op. 91–359 at 901:143–44.

In plaintiff's case, for example, applying RPC 4.2 to former employees would prevent plaintiff from communicating *ex parte* with a former low level Shiley employee who happened to observe how the Shiley Valves were handled during the manufacturing process. Even though the sum of such former employee's knowledge might be nothing more than factual observations, application of RPC 4.2 on an imputation theory would bar this communication. Plaintiff would then be cut off from obtaining the most basic factual information necessary to support his claim. *See Western Elec.*, 900 F.2d 283 ("To extend the term 'party' to include former employees ... who might have witnessed illegal activity by the company's management would in practice bar access by law enforcement to a vast number of potential witnesses with direct knowledge of wrongdoing.").

Defendants argue the more likely scenario is that plaintiff's counsel would communicate with former employees of Defendants who were directly and intimately involved in the transactions giving rise to this action. Defendants argue a former employee who was an actor in the transaction would be the source of extremely damaging testimony which could be dispositive of the issue of liability because that former employee's conduct during the course of the employment would certainly be imputed to the corporation. It is not apparent from the Comment, however, that RPC 4.2 must be read expansively merely because one former employee could provide more damaging factual evidence than another former employee. Nevertheless, Defendants' argument poses the question of under what circumstances, in the absence of an ongoing employment relationship, can a former employee's testimony be imputed to the corporation.

Significantly, the Comment does not specify under what circumstances the conduct of an employee may be "imputed" to employer. Consequently, it has been argued that the sentence in the Comment containing the terms "any other person" justifies extending RPC 4.2 to former employees when RPC 4.2 does not explicitly refer to former employees. *Sperber v. Washington–Heights–West Harlem–Inwood Mental Health Council, Inc.*, slip op. No. 82–7428 (S.D.N.Y. 21 Nov. 1983.), *vacated and withdrawn*, (relied upon by *PSE & G*, 745 F.Supp. at 1040); *see* Comment ("this Rule prohibits communications ... with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability"). It has been pointed out, however, that the terms "any other person" may well refer to other current agents of the employer who are not, strictly speaking, employees. *Polycast*, 129 F.R.D. at 627.

The *Polycast* court makes a persuasive argument for this reading of the Comment. The *Polycast* court examined a draft of the Comment and compared it to the final version of the Comment. The draft limited the scope of RPC 4.2 to managerial employees and apparently did not contain any reference to "other persons." *Polycast*, 129 F.R.D. at 627 (citing Stahl, *Ex Parte Interviews with Enterprise Employees: A Post–Upjohn Analysis*, 44 Wash. & Lee L.Rev. 1181, 1219 (1987)). The *Polycast* court then observed:

Recognizing that this standard left exposed many vulnerable lower level employees, the ABA substituted the current comments. It retained the alter ego approach with respect to the first category dealing with managerial employees. It then extended the definition of "party" to include lower level persons involved in the transaction or event at issue.... Although the comment refers to "any other person" from whose act corporate liability may be imputed rather than "any employee," this does not imply an intent to include former employees. More likely, it was designed to cover agents whose acts are attributable to an organization but who may not technically be employees.

129 F.R.D. at 627. The *Polycast* court concluded RPC 4.2 was "not designed to make former employees adjuncts of the corporate 'party.' Rather, [it was] intended to insure that current employees—whether participants or witnesses—would not be subject to interrogation by an adversary's counsel except through formal discovery." *Id.*

The Standing Committee has also indicated "other persons" refers to other current agents such as independent contractors. Formal Op. at 901:142 ("The Rule presumably covers independent contractors...."). Significantly, this interpretation of the Comment clarifies the confusion regarding when the conduct or knowledge of an employee may be imputed to a corporation. Under this reading, imputing liability to the corporation would be based upon the traditional agency principle that the acts of an agent may be imputed to the principal. *Thomas v. Duralite Co.*, 386

F.Supp. 698, 728 (D.N.J.1974) (corporation is liable for the conduct of its agents), *aff'd in part, rev'd in part*, 524 F.2d 577 (1975), *aff'd* 559 F.2d 1209 (3d Cir.1977); *JMB Enter.*, 228 N.J.Super. at 617, 550 A.2d 764 (fault of agent may be imputed to principal).

The structure of the sentence containing the term "other persons" suggests the "impute" language must be read in tandem with the "admissions" language.[10] Because the "admissions" language can only be interpreted to mean current employees, it may be reasoned that the "impute" language refers only to other current agents of the corporation who are not, strictly speaking, employees. The propriety of this reading of the "impute" language in the Comment is further supported by the fact it is more consistent with the other tests set forth in the Comment because the other tests are all, in essence, based on agency principles. If the imputation of liability is based on agency principles, then former employees would clearly not be covered by RPC 4.2 because former employees ordinarily are not agents of the corporation.

In essence, the Comment suggests a determination as to whether an employee of a corporation is a party to a suit involving the corporation should be based upon whether an employee can bind the corporation. *Wright*, 691 P.2d at 568 (citing Law. Man. on Prof. Conduct (ABA/BNA) 71:314 (1984)); *DiOssi*, 583 A.2d at 1345. Accordingly, it cannot be said a former employee is a party because a former employee ordinarily cannot bind the corporation in the sense that an agent binds a principal. Although a former employee can certainly

---

**10.** For example, the Comment states:

[T]his Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, *and* with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability *or* whose statements may constitute an admission on the part of the organization.

RPC 4.2 at Comment (emphasis added). The use of the "and" suggests there are two scenarios contemplated by the ABA: (1) managerial situations and (2) "other person" situations. This language has been read to address three situations: (1) managerial situations, (2) "other person" situations and (3) admissions situations. *PPG*, 134 F.R.D. at 121; *Curley*, 134 F.R.D. at 88–92; *PSE & G*, 745 F.Supp. at 1039; Formal Op. at 901:142. Nevertheless, the use of the "or" suggests the impute language and the admissions language both relate to "other persons." If this is accepted as the proper reading, then it can be reasoned the factual predicates to admissions must also exist when faced with statements to be imputed to the corporation.

damage a corporation by revealing facts giving rise to liability, that possibility does not implicate the purposes of RPC 4.2.[11]

The holding in *PSE & G,* and other cases, which restricts an attorney's ability to communicate with former employees strikes an unreasonable balance between protecting a relationship that does not exist and unduly restricting the need for litigants to have access to all relevant factual information pertinent to the case. Because the Order strikes just such an unreasonable balance, it must be reversed as an abuse of discretion. One further issue, however, merits consideration.

### e. *Attorney–Client Privilege*

It may be argued the attorney-client privilege, when read into RPC 4.2, prevents *ex parte* communications with former employees. *See PPG,* 134 F.R.D. at 122. It has been noted that certain former employees "continue to personify the organization even after they have terminated their employment relationship." G. Hazard & W. Hodes, *supra,* at 738. Within this class would be former managerial employees who were involved in the transaction giving rise to the suit. *Id.* This continuing relationship could raise an issue under RPC 4.2. *See PPG,* 134 F.R.D. at 122.

■ Using this relationship to justify applying RPC 4.2 to former managerial employees, however, is misplaced. The rationale that former managerial employees should be off limits is not based upon the fact that they had some senior position with the corporation but upon the assumption that they may have had access to privileged information. G. Hazard & W. Hodes, *supra,* at 738; *see PPG,* 134 F.R.D. at 123. The attorney-client privilege, not RPC 4.2, may be a basis to argue against *ex parte* communications with former employees regardless of whether they were managerial.[12]

■ Significantly, the attorney-client privilege is not limited to managerial employees of a corporation. In *Upjohn,* the Supreme Court was faced with the question of which corporate employees were within the attorney-client privilege held by the corporation with respect to communications with its counsel. 449 U.S. at 390, 101 S.Ct. at 683. The Court had to decide whether control group employees, or those employees who are in a position to control or substantially influence corporate conduct taken on the basis of advice from counsel, were encompassed by the attorney-client privilege held by the corporation. *Id.* at 390–92, 101 S.Ct. at 683–84.

■ The Court declined to limit the privilege to control group employees. *Id.* at 391–92, 101 S.Ct. at 683–84. The Court acknowledged non-managerial employees will often be the ones most involved in corporate legal issues. *Id.* The Supreme Court reasoned, however, that to hold only control group employees are within the privilege would "frustrate the very purpose of the privilege by discouraging the communication of relevant information by employees of clients to attorneys seeking to render legal advice to the client corporation." *Id.* at 392, 101 S.Ct. at 684. Accordingly, because the attorney-client privilege is not limited to managerial employees, it cannot be used to justify applying RPC 4.2 to former managerial employees.

The attorney-client privilege cannot be used to justify an absolute proscription against *ex parte* communications with former employees. Significantly, the attorney-client privilege exists only to the extent attorney-client confidences are implicated. *PPG,* 134 F.R.D. at 123. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn,* 449 U.S. at 395, 101 S.Ct. at 685.

---

**11.** Seen in this light, to state it would be unfair to allow a former employee to divulge information damaging to the corporation, *see PSE & G,* 745 F.Supp. at 1042, ignores the unfairness to a litigant if he or she does not have access to facts underlying his or her claim.

**12.** A former employee may not have, however, any current attorney-client relationship with the corporation's counsel which would call the policies behind RPC 4.2 into play. *Polycast,* 129 F.R.D. at 625.

Accordingly, the attorney-client privilege cannot be used to justify an absolute proscription against *ex parte* communications with former employees when those communications would not disclose attorney-client confidences.[13] Rather, it should restrict only what may be asked during *ex parte* communications. *In re Home Shopping Network*, [1989–1990 Transfer Binder] Fed. Sec.L.Rep. ¶ 94,950 ("[C]ounsel should be permitted to question former corporate employees about factual matters not subject to privilege.").

 It is appropriate for counsel to communicate, *ex parte*, with former employees so long as no attorney-client confidences of the corporation are part of the inquiry. *PPG*, 134 F.R.D. at 123; *Amarin*, 116 F.R.D. at 41. No absolute bar to *ex parte* communications is required to protect such attorney-client confidences. It is sufficient that ethical considerations prevent an attorney from breaching the attorney-client privilege of the corporation.

*Conclusion*

For the reasons set forth above, RPC 4.2 is properly interpreted to permit *ex parte* communications with former employees of a corporate adversary. Accordingly, the Order, by circumscribing plaintiff's ability to communicate with former Shiley employees, is a clearly erroneous application of the law and an abuse of discretion. The Order is therefore reversed.

Plaintiff is permitted to communicate, *ex parte*, with any former employees of Defendants without the restrictions imposed by the Order. Plaintiff may not, however, inquire as to any matters which are subject to any privilege and any information obtained in violation of any privilege must be suppressed. In addition, plaintiff must comply with the strictures of RPC 4.3, which governs a lawyer's contacts with unrepresented individuals. RPC 4.3; *see* Formal Op. at 901:144.

---

13. One commentator has suggested that because former employees are deemed parties for the purposes of the attorney-client privilege of the corporation, those same former employees should also be deemed parties for the purposes of DR 7–104(A)(1), the Model Code counterpart to RPC 4.2. Stahl, *supra,* at 1206 n. 83. This reasoning, however, ignores a salient aspect of the attorney-client privilege: in the case of a corporation, the privilege is held by the corporation, not by its employees. *CFTC v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985). Moreover, the attorney-client privilege serves goals distinctly different from the goals served by RPC 4.2 and DR 7–104. The attorney-client privilege is intended to foster "full and frank" discourse between the attorney and his or her client. *Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682. As discussed above, RPC 4.2 is intended to preserve the adversarial posture of the parties and to prevent third parties from impinging on the attorney-client relationship. Because the attorney-client privilege and RPC 4.2 serve fundamentally distinct goals, there is no basis to use one to define the other.