**Robert Clark DUBOIS**

v.

**GRADCO SYSTEMS, INC. and
Keith B. Stewart.**

Civ. No. B–89–437 (JAC).

United States District Court,
D. Connecticut.

May 2, 1991.

Edward F. Hennessey, Brien P. Horan, Patricia J–Leary Campanella, Robinson & Cole, Hartford, Conn., for plaintiff.

Paul Sanson, Jeffrey Hellman, Shipman & Goodwin, Hartford, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION IN LIMINE

JOSÉ A. CABRANES, District Judge:

The question presented, apparently for the first time in any Federal or state court in Connecticut,[1] is whether Rule 4.2 of the Connecticut Rules of Professional Conduct—which prohibits a lawyer representing a client from communicating about the subject of the representation with an adverse party represented by another lawyer without the consent of that other lawyer— prohibits communications with a *former employee of an adverse corporate party* without the consent of the corporation's lawyer.

The complaint in this case essentially asserts claims for fraud, breach of contract and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). Plaintiff alleges (1) that defendants fraudulently induced him to enter into a royalty agreement by means of misrepresentations and non-disclosures concerning defendants' abilities to market his inventions; (b) that defendants violated the terms of the royalty agreement by systematically under-reporting and underpaying to him the monies due under the agreement; and (c) that defendants fraudulently induced him to release his rights under the royalty agreement in return for a lump sum payment. Plaintiff further avers that the defendants fraudulently induced him to enter into the release agreement and undervalue his royalty rights through (a) misrepresentations and non-disclosures concerning licensing agreements that Gradco Systems, Inc. ("Gradco") had entered into which would greatly increase the royalties plaintiff would reasonably have expected to receive in the future if he did not enter into the release agreement; (b) underpayment of past monies due under plaintiff's royalty agreement for the purpose of causing him

to undervalue the historic performance of his royalty contract; and (c) unfair and coercive tactics.

On November 6, 1990, counsel for defendants sent plaintiff's counsel a letter, *see* Memorandum of Law in Support of Plaintiff's Motion in Limine (filed Jan. 3, 1991) ("Plaintiff's Memorandum"), Exhibit A, stating that, because of a change in management, seven individuals whose depositions plaintiff previously had noticed were no longer employees of Gradco and that Gradco was therefore no longer in a position to produce them as deponents. On November 16, 1990, defendants' counsel sent plaintiff's counsel a second letter, *see* Plaintiff's Memorandum, Exhibit B, in which defendants' counsel took the "position that it would be improper for [plaintiff's counsel] to communicate directly with any of the former employees of Gradco who have knowledge about the underlying facts of this action." *Id.* Defendants' counsel based their position on Rule 4.2 ("Rule 4.2" or "the Rule") of the Connecticut Rules of Professional Conduct ("Connecticut Rules") which provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in this matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

On January 3, 1991, plaintiff filed a Motion in Limine together with Plaintiff's Memorandum, asking the court to determine that Rule 4.2 of the Connecticut Rules does not bar plaintiff's counsel from contacting or interviewing on an *ex parte* basis non-party former employees of Gradco. The Connecticut Rules are, in pertinent part, identical to the Model Rules of Professional Conduct promulgated by the American Bar Association. On January 15, 1991, defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion in Limine ("Defendants' Memorandum"). The court heard oral argument on plain-

---

**1.** *See* Memorandum in Support of Plaintiff's Motion in Limine (filed Jan. 3, 1991) at 3; Memorandum of Law in Opposition to Plain-

tiff's Motion in Limine (filed Jan. 15, 1991) at 6–7.

tiff's motion in limine on February 21, 1991, at which time the court reserved decision. In a letter to chambers dated March 8, 1991 (and ordered docketed today), counsel for plaintiff informed the court that the American Bar Association was about to release an opinion clarifying its view of the applicability of Rule 4.2 to former employees of an adverse corporate party. In that letter, plaintiff's counsel represented that "plaintiff would ... have no objection to the Court's deferring its decision until it has had the opportunity to review what the ABA will have to say."

On April 2, 1991, the court transmitted to all counsel by telecopier a draft copy of Formal Opinion 91–359 of the American Bar Association Standing Committee on Ethics and Professional Responsibility on "Contact with Former Employee of Adverse Corporate Party" (the "ABA Formal Opinion").[2] In an endorsement order entered on April 8, 1991, the court instructed counsel to file any briefs or memoranda regarding the relevance and implications of the ABA Formal Opinion by April 11, 1991. Defendants Memorandum in Response to the ABA's Formal Opinion 91–359 ("Defendants' ABA Memorandum") and Plaintiff's Memorandum with Respect to ABA Draft Formal Opinion 91–359 ("Plaintiff's ABA Memorandum") were both filed on April 11, 1991.

## DISCUSSION

█ Rule 4.2 clearly prohibits a lawyer from discussing a case with a party in the matter who is also represented by counsel, unless the lawyer has the permission of counsel or a court ruling authorizing it. The question in this case, however, is whether *former* employees of Gradco are considered represented "parties" to the dispute.

### A.

When a litigant is an organization and not an individual, it is often difficult to identify the represented parties who are protected by the Rule. The Rule itself does not define which individuals should be considered represented parties, but the drafters did provide an Official Comment which attempts to explain the Rule's application to an organization. The Comment to Rule 4.2 (the "Comment") provides in pertinent part as follows:

> In the case of an organization, the Rule prohibits communications by a lawyer for one party concerning the matter in representation [1] with persons having a managerial responsibility on behalf of the organization, and with any other person, [2] whose act or omission in connection with that matter may be imputed to the organization for the purposes of civil or criminal liability, or [3] whose statement may constitute an admission on the part of the organization.

Defendants argue that, although the Comment does not explicitly address whether Rule 4.2 applies to former employees, it does state in Section 2 that Rule 4.2 applies to "any other person whose act or omission ... may be imputed to the organization for the purposes of civil ... liability." According to defendants, the acts or omissions of the former employees who plaintiff seeks to interview in this case may be imputed to Gradco, and, hence, this court should not permit the *ex parte* contact sought by plaintiff. *See* Defendants' Memorandum at 7–12. For the reasons stated below, I am not persuaded that defendants' interpretation of Rule 4.2 and the Comment is appropriate.

In *Polycast Technology Corporation v. Uniroyal, Inc.,* 129 F.R.D. 621 (S.D.N.Y. 1990), the court reasoned persuasively that, under either Rule 4.2 or its predecessor and analogue, Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility,[3]

---

**2.** The draft copy was stamped "DRAFT" on the upper right corner of the first page. The court has since received a version of the ABA Formal Opinion stamped "FINAL" on the upper right corner of the first page. The two versions are otherwise identical in every respect. Both ver-

sions have been docketed and made a part of the record of this case.

**3.** Disciplinary Rule 7–104(A)(1) provides in pertinent part as follows:

> During the course of his representation of a client a lawyer shall not ... [c]ommunicate

there is no ethical rule barring *ex parte* communications with a former employee of an adverse corporate party. The court in *Polycast* pointed out that to the extent that Rule 4.2 and D.R. 7–104(A)(1) were formulated to preserve the integrity of the attorney-client relationship, there would be no current attorney-client relationship to jeopardize in the case of a former employee. *Polycast*, 129 F.R.D. at 625. The court in *Polycast* also observed that there was nothing in Rule 4.2 or the Comment to justify departing from "the traditional view ... that former employees are not encompassed within the term 'party' ... and so may be contacted without notice to the corporation's attorney." *Id.* at 626; *see also id.* at 627. "Whatever the right of the corporation to 'barricade' against *ex parte* contact those potential witnesses who are current employees, ... former employees are outside the ramparts. There is therefore no ethical bar against [plaintiff's] attorneys having ex parte communications with [the former employee]...." *Id.* at 628 (citation omitted).

The position taken by the *Polycast* court is consistent with that of Professor Geoffrey Hazard, Jr., Reporter for the ABA Commission on Evaluation of Professional Standards when the Model Rules were promulgated. With respect to Rule 4.2, Professor Hazard writes:

> This regime does not address communications with *former* agents and employees, and technically there should be no bar, since former employees cannot bind the organization, and their statements cannot be introduced as admissions of the organization. Speaking with a former employee therefore does not do damage to the policy underlying Rule 4.2—undercutting or "end-running" an on-going lawyer-client relationship.

G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 436 (1988 Supp.) (emphasis in original; citation omitted). And, in a deposition taken in another case, *Public Serv. Elec. & Gas Co. v. Associated*

*Elec. & Gas Servs., Ltd.*, 745 F.Supp. 1037 (D.N.J.1990) (*"Public Services"*), Professor Hazard stated that Rule 4.2 cannot

> be read to create an affirmative obligation by a lawyer, or by extension an investigator retained by him, to desist from contacting former employees of his or her adversary without notification of, and approval by, that adversary. Such a requirement is, I believe, contrary to the spirit of the ethics rules, which seek to balance attorney conduct with the requirements of effective representation.

Plaintiff's Memorandum, Exhibit D at 5–6.

Finally, this position is consistent with that taken in the ABA Formal Opinion, in which the Standing Committee on Ethics and Professional Responsibility states that "[n]either the Rule nor its comment purports to deal with *former* employees of a corporate party." ABA Formal Opinion at 3 (emphasis in original). The opinion explains that

> [w]hile the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the Rule does not do so and the [C]omment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

> Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that

matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

ABA Formal Opinion at 5.[4]

I am mindful that some courts have reached a contrary conclusion. Principal among those, according to defendants, was the recent decision from the District of New Jersey, in *Public Services,* 745 F.Supp. 1037. The *Public Services* opinion announced a "bright line test" prohibiting *all ex parte* contacts with a corporate party's former employees. An even more recent opinion from the District of New Jersey, however, has rejected *Public Services'* bright line test and held that Rule 4.2 does *not* preclude *ex parte* contacts with a corporate party's former employees. *See Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77, 85–88 (D.N.J.1991). And it bears noting that the court in *Public Services* did not have the benefit of the ABA Formal Opinion. In any event, I have carefully considered the *Public Services* opinion and, with respect, find it unpersuasive.

### B.

Defendants would nevertheless urge this court to interpret Rule 4.2 liberally and

prohibit *ex parte* contact of former Gradco employees. According to defendants, "[t]o exclude this group from the class of persons who engaged in prior acts or omissions which may be imputed to the corporation is to render" Section 2 of the Comment—that is, the section reading, "any other person ... whose act or omission ... may be imputed to the organization...."— "virtually meaningless," inasmuch as there is no other significant class of individuals to which the term "other person" could apply besides former employees. Defendants' ABA Memorandum at 4–5.

There are two significant shortcomings with this argument, however. First, if "other person" refers primarily or exclusively to former employees, then the drafters could very easily have made that reference explicit. And there seems little doubt that the drafters would have been explicit had they intended, as defendants claim they did intend, to overturn the traditional view that former employees are not encompassed within the term "party."[5] Second,

**4.** The bar associations of several states have addressed this question, and the opinions that the court located appear to be unanimous in holding that counsel may—under Rule 4.2 or its predecessor, Disciplinary Rule 7–104(A)(1)— conduct *ex parte* interviews of the former employees of an adverse corporate party. *See e.g., Illinois State Bar Association Opinion 85–12 (4/4/86),* Law.Man. on Prof. Conduct (ABA/BNA) No. 44, at 901:3001–3002 (Mar. 18, 1987) ("A lawyer may communicate directly with the former employee of a corporate defendant that is represented by counsel regarding matters occurring during the employee's tenure with the corporation, even if the employee was formerly part of the corporate control group."); *Pennsylvania Bar Association Opinion 88–153 (undated),* Law.Man. on Prof.Conduct (ABA/BNA) No. 86, at 901:7314 (Dec. 20, 1989) ("A lawyer may contact a witness who was formerly a regional manager employed by the opposing party, provided the manager is no longer under the employer's control."); *Minnesota Opinion 4 (7/86),* Law.Man. on Prof.Conduct (ABA/BNA) No. 44, at 901:5025 (Mar. 18, 1987) ("A lawyer representing a plaintiff against a corporation may contact former employees of the corporation if the lawyer discloses to the employees whether their interests are in conflict or adverse to the lawyer's client's interests."); *Bar Association of Nassau County Opinion 86–33 (7/31/86),* Law.Man. on Prof.Conduct (ABA/BNA) No. 84, at 901:6252 (Nov. 8, 1988) ("A plaintiff's lawyer may contact and interview

the defendant's former employee in connection with the case."); *Virginia State Bar Opinion 533 (12/16/83),* Law.Man. on Prof.Conduct (ABA/BNA) No. 24, at 801:8818 (Sept. 18, 1985) ("A lawyer may communicate directly with former officers, directors, or employees of an adversary corporation on the subject of pending litigation unless the lawyer has reason to know that such witnesses are represented by counsel."); *see also Amarin v. Maryland Cup,* 116 F.R.D. 36, 39 (D.Mass.1987) (summarizing the Massachusetts Bar Association's Formal Opinion 82–7 according to which Disciplinary Rule 7–104(A)(1) "applies only to present, not former, employees of the corporation"); G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 436.1 (1989 Supp.) (listing three other bar associations "allowing interviews with former employees": Colorado Bar Association Ethics Committee; Association of the Bar of the City of New York; and Florida Bar Professional Ethics Committee).

**5.** With limited exceptions not pertinent here, the "Rules of Professional Conduct," including Rule 4.2 (as approved by the Judges of the Connecticut Superior Court as in effect on October 1, 1986), express the standards of professional conduct expected of lawyers practicing in the United States District Court for the District of Connecticut. Rule 3(a)(1), Local Rules of Civil Procedure (D.Conn.1991).

and perhaps more important, defendants' premise is faulty: there *is* a class of individuals to which the term "other person" in the Comment applies (but for which, unlike the class of individuals constituting "former employees," there is no descriptive term that is clearly more compendious)—namely, agents, independent contractors, and others who are or may be the functional equivalent to current employees. *See* ABA Formal Opinion at 4 ("[T]hose addressed by the Comment are not denominated 'employees' but 'persons.' The Rule presumably covers independent contractors whose relationship with the organization may have placed them in the factual position contemplated by the Comment."); *see also Polycast*, 129 F.R.D. at 627 (the term "'any other person' ... was [apparently] designed to cover agents whose acts are attributable to an organization but who may not technically be employees").

In the alternative, defendants invite the court to exercise its "inherent authority to set appropriate ethical standards for lawyers practicing before it," by prohibiting *ex parte* contact with the former Gradco employees in this case. Defendants' ABA Memorandum at 2, 5–7. In essence, defendants invite the court to disregard the traditional rule, which permits *ex parte* contact with former employees of a corporate party, and the formal opinion of the American Bar Association, which is entirely consistent with the traditional rule (not to mention the informed, albeit not controlling, opinion of Professor Hazard) and, instead, to liberally interpret the arguably expansive language in one clause in the Comment. I decline this invitation. Rule 4.2 and the Comment do not indicate any intention to deviate from the traditional rule and, hence, do not appear to preclude counsel for plaintiff in this case from interviewing the former employees of Gradco *ex parte*. Moreover, in my view, permitting counsel for plaintiff to do so is clearly in the interest of justice in this case. *Cf. Polycast*, 129 F.R.D. at 628 (providing "strong reasons why it would be unwise to expand the definition of a corporate party beyond its present contours").

## CONCLUSION

For the reasons stated above, plaintiff's motion in limine is GRANTED.

Several caveats are in order, however. First, although defendants do not allege, much less show, that the former Gradco employees possess—by virtue of their involvement in the underlying matters—information that might be protected under the attorney-client privilege, any such privileged information could pose problems with respect to *ex parte* contact with former employees. As the leading commentators in this field have well noted,

> *some* former employees continue to personify the organization even after they have terminated their employment relationship. An example would be a managerial level employee involved in the underlying transaction, who is also conferring with the organization's lawyer in marshalling the evidence on its behalf. But the rationale is a different one. This kind of former employee is undoubtedly privy to privileged information, including work product, and an opposing lawyer is not entitled to reap a harvest of such information without a valid waiver by the organization, or according to narrow exceptions in the discovery ... which permitted ex parte interviews of former employees unless they remained members of the "control group" (such as non-employee directors).

G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 436–436.1 (1988 Supp.) (emphasis in original; citation omitted). In this case, Gradco has not identified any specific privileged information to which the former employees were privy and, thus, has not carried its burden of justifying any protective order at this time. *See Polycast*, 129 F.R.D. at 629; *see also von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987) (proponent of privilege has burden of establishing those facts that are the essential elements of the privilege), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987).

In any event, it goes without saying that, with respect to any unrepresented former employee, plaintiff's counsel must take care not to seek to induce or listen to disclosures by the former employees of any privileged attorney-client communications to which the employee was privy. After all, the privilege does not belong to, and is not for the benefit of, the former employee; rather, it belongs to, and is for the benefit of, Gradco. Thus, efforts by plaintiff's counsel to induce or listen to privileged communications may violate Rule 4.4 of the Model Rules of Professional Conduct, which requires respect for the rights of third persons.[6] *See* ABA Formal Opinion at 5; *cf. Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 41 (D.Mass.1987) (declining to apply Rule 4.2 to former employees on the facts of the case, but noting the possibility that communications between a former employee and his former corporate employer's counsel could be privileged).

Moreover, plaintiff's counsel must also comply with the requirements of Rule 4.3 of the Model Rules of Professional Conduct.[7] Rule 4.3, as it applies here, requires that plaintiff's lawyer make clear to the former Gradco employees the nature of the lawyer's role in this case, including the identity of plaintiff and the fact that Gradco is an adverse party.

If defendants are able to point to specific instances of ethical violations or questionable ethical behavior by plaintiff's counsel with regard to the *ex parte* interviews of former Gradco employees, the court could order the discontinuation of such interviews. *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. at 86 (D.N.J.1991). If any such information comes to light, defendants are free, of course, to file a motion for a protective order or other relief.

**6.** Rule 4.4 provides as follows:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

**7.** Rule 4.3 provides as follows:

Finally, if any *ex parte* statements made by former Gradco employees impute liability to defendants, defendants may be able to argue persuasively that such evidence is inadmissible. This ruling does not preclude defendants from raising in due course any evidentiary objections they may have with respect to any such *ex parte* statements.

It is so ordered.

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested, when the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter. The lawyer shall make reasonable efforts to correct the misunderstanding.