Lisa CRAM, Plaintiff,

v.

The LAMSON & SESSIONS CO., CARLON DIVISION, an Ohio Corporation, Defendant.

No. 3–92–CV–10157.

United States District Court,
S.D. Iowa,
Davenport Division.

April 13, 1993.

Charles W. Brooke of Noyes, O'Brien, Gosma & Brooke, Davenport, IA, for plaintiff.

Thomas J. Barnard of Duvin, Cahn & Barnard, Cleveland, OH, and Richard W. Farwell of Farwell & Bruhn, Clinton, IA, for defendant.

## ORDER GRANTING APPLICATION FOR DISCOVERY

BENNETT, United States Magistrate Judge.

This employment discrimination litigation raises the recurring question of whether Plaintiff's counsel may engage in *ex parte* communications with former employees of Defendant without violating the proscription on attorney communications contained in Iowa Code of Professional Responsibility DR 7–104(A)(1) (1992).[1]

Because Plaintiff's counsel are licensed Iowa attorneys and subject to being sanctioned for violations of the Iowa Code of Professional Responsibility, the court shall assume for the purposes of this motion that DR 7–104(A)(1) is applicable here. DR 7–104(A)(1) is substantially identical to American Bar Association Model Rule of Professional Conduct 4.2 which provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter,

---

1. DR 7–104(A)(1) is Iowa's verbatim adoption of Disciplinary Rule 7–104(A)(1) of the ABA Model Code of Professional Responsibility. DR 7–104(A)(1) states in pertinent part:

During the course of his representation of a client a lawyer shall not ... [c]ommunicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

## I. INTRODUCTION AND BACK-GROUND

This is a sexual harassment action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–17. Plaintiff Lisa Cram alleges she was sexually harassed by her immediate supervisor at Defendant's Carlon Division plant in Clinton, Iowa, and ultimately fired in retaliation for filing a complaint about the harassment.

On November 17, 1992, Plaintiff's attorney wrote to Defendant's counsel to inquire whether Defendant would object to Plaintiff's counsel contacting and interviewing former employees of Carlon. Defendant's counsel responded that Defendant would not consent to such interviews and would seek sanctions if Plaintiff's counsel did so. As a result, Plaintiff's counsel filed an Application for Discovery on March 2, 1993 seeking court permission to engage in *ex parte* communications with former employees of the Defendant. Defendant failed to file a timely resistance to Plaintiff's motion. Local Rule 14(f) provides in pertinent part that "[i]f no resistance is filed the motion may be granted." A review of existing case law indicates that this issue is being raised with greater frequency. Therefore, the court will address the merits of this important and recurring issue, unfortunately without the benefit of full briefing by the parties.

## II. ANALYSIS

### A. Rationale Underlying DR 7–104(A)(1)

The express language of DR 7–104(A)(1) clearly prohibits an attorney from discussing a case with a party who is not represented by counsel, unless the attorney has permission of counsel or is authorized by law to do so. When a party is represented by counsel, however, the rule does not define who is to be considered a represented party. Therefore, the question arises whether DR 7–104(A)(1) applies to former employees of the opposing party.

There are several rationales for the proscription of *ex parte* communication with parties represented by counsel. "First, '[i]t prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and lay people.'" *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990) (quoting *Papanicolaou v. Chase Manhattan Bank*, 720 F.Supp. 1080, 1084 (S.D.N.Y.1989)); *see Valassis v. Samelson*, 143 F.R.D. 118, 120 (E.D.Mich.1992) (interpreting Model Rule 4.2); *Goff v. Wheaton Indus.*, 145 F.R.D. 351, 354 (D.N.J.1992) (interpreting Model Rule 4.2); *Hanntz v. Shiley, Inc.*, 766 F.Supp. 258, 265 (D.N.J.1991) (interpreting Model Rule 4.2); *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 87 (D.N.J.1991) (interpreting Model Rule 4.2). Second, the Rule "preserves the integrity of the attorney-client relationship" by preventing an attorney from coming between the opposing attorney and client. *Polycast*, 129 F.R.D. at 625; *Hanntz*, 766 F.Supp. at 265; *Papanicolaou*, 720 F.Supp. at 1084; *see also Curley*, 134 F.R.D. at 87. Third, the Rule prevents "the inadvertent disclosure of privileged information." *Polycast*, 129 F.R.D. at 625. Finally, the Rule advances dispute settlements by channeling communications between lawyers accustomed to the negotiation process. *Id.*

These policy considerations, however, have marginal relevance when the communication is between an attorney and a former employee of an organization. *Id.; see Goff*, 145 F.R.D. at 356; *Hanntz*, 766 F.Supp. at 265. Because the former employee no longer works on the organization's behalf, the former employee will not be a party to settlement negotiations. *Polycast*, 129 F.R.D. at 625; *see Hanntz*, 766 F.Supp. at 265; *Goff*, 145 F.R.D. at 354. Furthermore, an attorney-client relationship between former employee and the employer's attorney is unlikely. Accordingly, the risk of jeopardizing an attorney-client relationship is substantially diminished. *Polycast*, 129 F.R.D. at 625; *see Hanntz*, 766 F.Supp. at 265. The former employee, however, may have obtained privi-

---

unless the lawyer has the consent of the other lawyer or is authorized by law to do so. Model Rules of Professional Conduct Rule 4.2 (1992). Because DR 7–104(A)(1) and Rule 4.2 are substantially identical, the court will consider discussion, comments and opinions concerning Rule 4.2 in its analysis of DR 7–104(A)(1).

leged information during employment which may affect the employer's potential liability. *Polycast*, 129 F.R.D. at 625–26. Thus, concerns of preventing the inadvertent disclosure of privileged information by the former employee are still present. *Id.* at 626.[2]

In determining the appropriate resolution of this issue, the court is guided by substantial case law on this issue interpreting both DR 7–104(A)(1) and Model Rule 4.2.[3] These decisions are discussed in the following section.

### B. Case Law Regarding DR 7–104(A)(1) and Rule 4.2

■ *(i). DR 7–104(A)(1).* Courts have uniformly held that DR 7–104(A)(1) does not generally prohibit *ex parte* communications with former employees of an opposing party. *See Sequa Corp. v. Lititech, Inc.*, 807 F.Supp. 653, 659–60 (D.Colo.1992); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 561–62 (N.D.Ga.1992); *Polycast*, 129 F.R.D. at 628–29; *Sherrod v. Furniture Ctr.*, 769 F.Supp. 1021, 1022 (W.D.Tenn.1991); *Siguel v. Trustees of Tufts College*, No. 88–0626–Y, 1990 WL 29199, at *4 (D.Mass. Mar. 12, 1990); *see also Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 39–41 (D.Mass.1987) (noting in dictum that DR 7–104 does not apply to former employees absent a showing that former employees' acts or omissions could be imputed to employer); *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 253 (D.Kan.1988) (indicating in dictum that *ex parte* contact with former employees permissible absent showing that former employees' actions may be imputed to employer). The policy reasons for not including former employees within the definition of party are summarized in *Polycast Technology Corp.*:

First, any shift away from informal information gathering toward formal discovery

increases costs and reduces judicial efficiency. Second, and more important, it would act as a deterrent to the disclosure of information. Former employees often have emotional or economic ties to their former employer and would sometimes be reluctant to come forward with potentially damaging information if they could only do in the presence of the corporation's attorney.

129 F.R.D. at 628 (citations omitted).

These policy considerations substantially impact the cost and delay of federal civil litigation. First, if all *ex parte* communications with an opposing party's former employees are prohibited, counsel's attempts at engaging in informal discovery will be sharply curtailed. In most cases, counsel will not have informal access to witnesses with important knowledge of critical facts. Counsel will be unable to access the merits of a case inexpensively and quickly by contacting these witnesses. Instead, counsel will be forced to file a lawsuit and engage in time-consuming and expensive formal discovery. Indeed, prohibiting *ex parte* communications with an opposing party's former employees could result in nonmeritorious cases being filed that otherwise would not have been filed, in order to learn information through formal discovery whether to prosecute the particular case. Formal discovery, in turn, can create protracted and quarrelsome discovery disputes which consume finite judicial resources.

Prohibiting *ex parte* communications could also result in potentially meritorious cases not being filed. Plaintiff's counsel would be deprived of a primary source of informal fact gathering to determine the merits of a case. If, however, counsel is permitted to contact former employees, counsel may be able to quickly determine whether the case is meritorious.[4] Thus, allowing *ex parte* communi-

---

**2.** Regardless of these concerns, "the traditional view has been that former employees are not encompassed within the term 'party' in DR 7–104[(A)(1)], and so may be contacted without notice to the corporation's attorney." *Polycast,* 129 F.R.D. at 626.

**3.** Forty states and the District of Columbia have adopted either the Model Rules or their equivalent. John E. Iole & John D. Goetz, *Ethics or Procedure? A Discovery–Based Approach to Ex*

*Parte Contacts with Former Employees of a Corporate Adversary,* 68 Notre Dame L.Rev. 81, n. 9 (1992).

**4.** Even if counsel concludes the case is meritorious and presses forward, the informal contact with former employees may result in less need for formal discovery because counsel will be in a better position to assess which former employees are significant to the case.

cations with former employees has the potential to reduce costly and expensive formal discovery. Moreover, it also has the potential of screening non-meritorious cases. Finally, allowing *ex parte* communications with former employees facilitates earlier settlement by expediting the flow of important factual information.

A second consequence of prohibiting counsel from contacting former employees may be to foreclose discovery of pertinent material due to the former employee's fear and apprehension to communicate. Instead of having the initial contact between the former employee and counsel take place in informal and relaxed surroundings, such as the former employee's home, the exchange would likely occur under intense and formal proceedings. Furthermore, former employees may be hesitant to discuss matters openly in the presence of their former employer's attorney because of perceived economic and social consequences that could result from their actions. Thus, permitting contact with former employees furthers the laudable goal of early and inexpensive disclosure of factual information concerning the merits of a case.

Case law interpreting and policy reasons underlying DR 7–104(A)(1) clearly support the conclusion that DR 7–104(A)(1) does not bar counsel from having *ex parte* contact with a party's former employees. This is also true of DR 7–104(A)(1)'s sister rule, Model Rule 4.2, discussed below.

*(ii). Model Rule 4.2.* Under the model rule, the majority of courts have similarly held that Rule 4.2 does not apply to former employees and therefore does not restrict *ex parte* communications with *any* former employee. *Goff,* 145 F.R.D. at 354; *Valassis,* 143 F.R.D. at 122; *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899, 904 (E.D.Pa.1991), *appeal dismissed,* 961 F.2d 207 (3rd Cir.1992); *Shearson Lehman Bros. v. Wasatch Bank,* 139 F.R.D. 412, 418

(D.Utah 1991); *Hanntz,* 766 F.Supp. at 263; *Dubois v. Gradaco Systems, Inc.,* 136 F.R.D. 341, 345–47 (D.Conn.1991). Indeed, only one court has proscribed any *ex parte* communications with former employees. *See Public Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Serv., Ltd.,* 745 F.Supp. 1037, 1039 (D.N.J.1990).[5]

A minority of courts have allowed *ex parte* communications with former employees subject to certain conditions. *Valassis v. Samelson,* 143 F.R.D. 118, 121 (E.D.Mich.1992). One court concluded that *ex parte* communications with former managerial employees may not be conducted if those employees had responsibilities concerning the subject matter of the litigation, *see Porter v. Arco Metals Co.,* 642 F.Supp. 1116, 1118 (D.Mont.1986). Other courts have held that former managerial employees may be contacted if none of the information they provided would impute liability to the former employer. *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77, 82–83 (D.N.J.1991); *University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa. 1990); *PPG Indus., Inc. v. BASF Corp.,* 134 F.R.D. 118, 121 (W.D.Pa.1990); *Rentclub, Inc. v. Transamerica Rental Fin. Corp.,* 811 F.Supp. 651, 657–58 (M.D.Fla.1992); *In re Home Shopping Network, Inc. Sec. Litig.,* No. 87–248–CIV–T–13A, 1989 WL 201085, at *1–2 (M.D.Fla. June 22, 1989). In reaching these decisions, the courts looked to the official Comment to Rule 4.2, which provides in pertinent part:

> In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or

**5.** Although Defendant's counsel relies on *Public Serv. Elec. & Gas Co.,* this case is an anomaly among all reported cases on the issue of *ex parte* communications with former employees and it has not been followed by any other court. Indeed, *Public Serv. Elec. & Gas* has been pointedly criticized by two other decisions out of the New Jersey District. *See Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77, 80 (D.N.J.1991); *Hanntz,*

766 F.Supp. at 266–67. The only other cases interpreting Model Rule 4.2 as prohibiting *ex parte* contact with former employees, *American Protective Ins. Co. v. MGM Grand Hotel–Las Vegas,* Nos. 83–2674, 83–2728 (9th Cir. Dec. 3, 1984), and *Sperber v. Mental Health Council, Inc.,* No. 82 Civ. 7428 (S.D.N.Y. Nov. 21, 1983), were subsequently vacated and withdrawn. *Curley,* 134 F.R.D. at 86.

whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.

Model Rules of Professional Conduct Rule 4.2 cmt. (1992).

The court concludes, however, that the interpretations of the Comment to Rule 4.2 in *Polycast,* 129 F.R.D. at 626, and *Hanntz,* 766 F.Supp. at 269 persuasively demonstrate that Model Rule 4.2 does not prohibit *ex parte* communications with former employees.

The Comment defines an organizational "party" as (1) "persons having a managerial responsibility[,]" (2) "any other person" whose act or omission may be imputed to the organization for purposes of liability or whose statements may constitute an admission by the corporation. *See Hanntz,* 766 F.Supp. at 266; *Valassis,* 143 F.R.D. at 122; *see also Curley,* 134 F.R.D. at 88 (construing Comment to address three situations: managerial, "other person," and admissions).

Relying on this Comment, some courts have construed Rule 4.2 to define "party" to include certain former employees. *See e.g., Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 40 (D.Mass.1987); *Curley,* 134 F.R.D. at 88. Clearly, however, the first category of who may constitute a party is limited to current employees. *Polycast,* 129 F.R.D. at 626; *see Valassis,* 143 F.R.D. at 122. A former employee cannot be a "person having managerial responsibility," and "it is a general rule of evidence that a statement of a *former* agent does *not* constitute an admission on the part of an organization." 2 G. Hazard & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 4.2:108, at 741 (1991 Supp.); *Valassis,* 143 F.R.D. at 122; *Hanntz,* 766 F.Supp. at 266; *see Fed. R.Evid.* 801(d)(2)(D). Thus, under the first category, a former managerial employee cannot bind his or her former employer after the agency relationship has terminated.

*Hanntz,* 766 F.Supp. at 266–67; *Sherrod v. Furniture Ctr.,* 769 F.Supp. 1021, 1022 (W.D.Tenn.1991) ("Former corporate employees have no authority under law to bind the corporation by their current deeds and statements."); *see Anderson v. United States,* 417 U.S. 211, 218–19 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 20 (1974). Likewise, under the second category, for a statement to constitute an admission on behalf of his or her employer, it must be "made during the existence of the relationship." *Fed. R.Evid.* 801(d)(2)(D); *see Curley,* 134 F.R.D. at 92; *see also Valassis,* 143 F.R.D. at 122.

 The second category's language referring to other persons acts being imputed to the employer is more problematic. Obviously, under the theory of respondeat superior, tortious conduct by an employee which arises during the scope of his or her employment may be imputed to the employer. *See* Restatement (Second) of Agency § 219 (1958).[6] Similarly, under Title VII, an employer may be held liable for the harassing actions of an employee if management-level employees knew, or have reason to know about the abusive conduct. *See Hall v. Gus Const. Co., Inc.,* 842 F.2d 1010, 1015–16 (8th Cir.1988). Because acts of a former employee done during the employee's period of employment may be imputed to the employer, some courts have interpreted the second category to include both present and former employees. *See Valassis,* 143 F.R.D. at 122–23; *Curley,* 134 F.R.D. at 81. *But see Polycast,* 129 F.R.D. at 627 (impute language refers only to non-employees who act as agents for corporation).

The cases noted above interpreting the second category to include former employees presume that the category of "other persons" whose actions may be imputed to the employer is separate and distinct from a third classification, individuals whose statements may constitute admissions. This interpretation is flawed. *Hanntz* persuasively demonstrates:

The structure of the sentence containing the term "other persons" suggests the "impute" language must be read in tandem

---

**6.** Generally, an employee's conduct which is criminal or malicious may not be imputed to an employer unless it was either directed or ratified

by the employer. *See* Restatement (Second) of Torts § 909 (1977).

with the admissions. Because the "admissions" language can only be interpreted to mean current employees, it may be reasoned that the "impute" language refers only to other current agents of the corporation who are not, strictly speaking, employees. The propriety of this reading of the "impute" language in the Comment is further supported by the fact it is more consistent with the other tests set forth in the Comment because the other tests are all, in essence, based on agency principles. If the imputation of liability is based on agency principles, then former employees would clearly not be covered by RPC 4.2 because former employees ordinarily are not agents of the corporation.

*Id.* at 269.

Second, as *Polycast* illustrates, the term "any other person" in all probability refers to non-employee agents of the party, and not former employees. *Polycast,* 129 F.R.D. at 627. In *Polycast,* the court noted that a draft of the Model Rule 4.2 Comment referred only to managerial employees, and made no reference to "other persons." *Id.* The court then explained:

Recognizing that this standard left exposed many vulnerable lower level employees, the ABA substituted the current comments. It retained the alter ego approach with respect to the first category dealing with managerial employees. It then extended the definition of "party" to include lower level persons involved in the transaction or event at issue ... Although the comment refers to "any other person" from whose act corporate liability may be imputed rather than "any employee," this does not imply an intent to include former employees. More likely, it was designed to cover agent whose acts are attributable to an organization but who technically may not be employees.

*Id.* The court went on to conclude that the Comments to Model Rule 4.2 "were not designed to make former employees adjuncts of the corporate 'party.' Rather, they were in-

tended to ensure that current employees—whether participants or witnesses—would not be subject to interrogation by an adversary's attorney except through formal discovery." *Id.*

The decisions construing Rule 4.2 as applicable to former managerial employees, with the exception of *Valassis* and *Rentclub,* were decided prior to the March 22, 1991, when the American Bar Association Committee on Ethics and Professional Responsibility ("the Committee") issued ABA Formal Opinion 91–359. In this opinion, the Committee concluded that neither Model Rule 4.2 nor its Comments extend to former employees.

The Committee stated in pertinent part:

While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, [sic] the fact remains that the text of the Rule does not do so and the [C]omment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

ABA Committee on Professional Ethics and Professional Responsibility, Formal Opinion 91–359 at 3 (1991).[7] Since its publication, several courts have adopted the conclusion reached in the opinion and have held that Model Rule 4.2 does not bar *ex parte* communication with former employees. *See Goff,*

---

7. Several state bar associations have addressed this issue and have unanimously held that under either Rule 4.2 or DR 7–104(A)(1) an attorney may conduct *ex parte* interviews with former employees of an opposing corporate party. *See*

*Dubois v. Gradaco Systems, Inc.,* 136 F.R.D. 341, 345 n. 4 (D.Conn.1991) (citing bar association opinions of Illinois, Pennsylvania, Minnesota, Nassau County, Virginia, Massachusetts, Colorado, City of New York, and Florida).

145 F.R.D. at 354–55; *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. at 564; *Shearson Lehman Bros., Inc.*, 139 F.R.D. at 417.[8]

The court concludes that the reasons advanced in those decisions interpreting Model Rule 4.2 as not proscribing contact with former employees of an opponent to be persuasive. First, the underlying policies of Model Rule 4.2 are not served by extending its application to former employees. *Hanntz*, 766 F.Supp. at 265. Contacting former employees of an opponent will generally not impact upon the opponent's attorney client relationship. *Id.* As noted in *Goff,* "'restrict[ing] an attorney's ability to communicate with former employees strikes an unreasonable balance between protecting a relationship that does not exist and unduly restricting the need for litigants to have access to all relevant information ...'" *Goff,* 145 F.R.D. at 356 (quoting *Hanntz,* 766 F.2d at 270). Second, the term "any other person" in the Comment to Rule 4.2 was meant to refer to non-employee agents, not former employees. *See Polycast,* 129 F.R.D. at 627. Third, the "other persons" language and the admissions language found the Comment to Rule 4.2 must be read in conjunction. Reading in this manner, the imputation language relies upon the principles of agency. Because former employees do not constitute agents of an employer, the former employees are not covered under the imputation language. *Hanntz,* 766 F.Supp. at 269–70. Finally, any doubts about the meaning of the Comment's meaning were erased by Formal Opinion 91–359.

For the reasons set forth above, the court concludes that Model Rule 4.2 must be read as permitting *ex parte* communications with former employees of an opposing party. Because the language of Model Rule 4.2 is nearly identical to that found in its immediate predecessor, DR 7–104, the conclusion reached above lends further support to the proposition that DR 7–104 does not proscribe an attorney's *ex parte* communications with former employees of an opponent.

### C. Attorney–Client Privilege

It must be noted that an attorney's *ex parte* communications with a former employee of a party may not go unchecked by ethical rules. This is especially true when a former employee continues to

> personify the organization even after they have terminated their employment relationship. An example would be a managerial level employee involved in the underlying transaction, who is also conferring with the organization's lawyer in marshalling the evidence on its behalf. This kind of former employee is undoubtedly privy to privileged information, including work product, and an opposing lawyer is not entitled to reap a harvest of such information without a valid waiver by the organization. . . .

2 Hazard & Hodes, *supra*, § 4.2:107 at 739. Even the ABA Committee in its Formal Opinion on Rule 4.2 stressed caution to an attorney conducting *ex parte* communications with former employees concerning privileged information:

> With respect to any unrepresented former employee, of course, the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege. . . .

ABA Formal Opinion 91–359 at 3.

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their

---

**8.** Formal Opinion 91–359 is consistent with conclusions reached by commentators on the subject:

> The no-contact regime described in [Model Rule 4.2] does not address communications with *former* agents and employees, and technically there should be no bar, since former employees cannot bind the organization, and their statements cannot be introduced as admissions of the organization. Speaking with a former employee therefore does not do damage to the policy underlying Rule 4.2–undercutting or "end-running" an on-going lawyer-client relationship.
> 2 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 4.2:107, at 739 (Supp.1991).

clients.... and [the privilege] has been interpreted as preventing disclosure of privileged information by former employees." *Valassis*, 143 F.R.D. at 124. It may be argued that the attorney client privilege should prevent *ex parte* communications with former managerial employees when read into DR 7–104(A)(1). *See PPG*, 134 F.R.D. at 122–23. However, this argument is based not on the employee's former position in the company, but that employee's access to privileged information. Thus, the attorney-client privilege, not DR 7–104(A)(1), should constitute the basis for argument "against *ex parte* communications with former employees regardless of whether they were managerial." *Hanntz*, 766 F.Supp. at 270.

This court agrees with the reasoning of the court in *Hanntz*:

> The attorney-client privilege cannot be used to justify an absolute proscription against *ex parte* communications with former employees. Significantly, the attorney-client privilege exists only to the extent attorney-client confidences are implicated. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." ... [The attorney-client privilege] should restrict only what may be asked during *ex parte* communications.

*Hanntz*, 766 F.Supp. at 270–71 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981)) (citations omitted).

■ This court places no restrictions on *ex parte* communications with former employees, managerial or otherwise, of Defendant to the extent that no attorney-client confidences are involved in such communications. Thus, an attorney communicating with the former employees of the opposing party may not inquire into privileged attorney-client communications because "[a]ny privilege existing between the former employee and the organization's counsel belongs to the organization, and can only be waived by the organization." *Sequa Corp.*, 807 F.Supp. at 668. In the case at bar, no privileged information to which the former employees were privy has been identified. If Defendant can produce sufficient evidence that privileged communications may be divulged by the former employee during *ex parte* communications, a protective order may be sought pursuant to Federal Rule of Civil Procedure 26(c) and a narrowly-tailored court order excluding such privileged information may be appropriate. *See Valassis*, 143 F.R.D. at 125; *Polycast*, 129 F.R.D. at 629; *Dubois*, 136 F.R.D. at 346.

## III. CONCLUSION

In light of overwhelming case law and commentary on the subject supporting *ex parte* communications with former employees, this court is persuaded that DR 7–104(A)(1) does not proscribe *ex parte* communications with the Defendant's former employees. Even if the statements of a former employee may reveal facts which give rise to corporate liability, this possibility does not implicate the purposes of DR 7–104(A)(1). *See Hanntz*, 766 F.Supp. at 260–70. The court further concludes that reading the rule otherwise unnecessarily constricts discovery under Federal Rule of Civil Procedure 26 without furthering the purpose of DR 7–104 and the concerns it seeks to address. Should the *ex parte* communications with Defendant's former employees raise concern that privileged communications will be divulged, Defendant may seek a protective order from the court to suppress any information which may be obtained in violation of the attorney-client privilege.

**IT IS SO ORDERED.**