[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT CITY OF MERIDEN'S MOTION FOR SANCTIONS
The plaintiffs in this action seek damages based on a slip and fall incident which they allege was due to the City's negligence in maintaining an uncovered water main hole. The defendant has now moved that this court sanction the plaintiffs' attorney based on a course of conduct which it alleges to be violative of Sections 4.2 and/or 4.3 of the Rules of Professional Conduct. Specifically, the City alleges that following the filing of the complaint and the appearance of the defendant's attorneys, the plaintiffs' counsel, Attorney Ronald Stempien, initiated contact with several City employees. In particular, it alleges that Stempien contacted City Clerk Irene Masse; Jo-Ann Amentea, administrative secretary for the Meriden Department of Public Works; Richard Graham, the City of Meriden's Deputy Director of Public Works; and Lori Bentley, an account clerk in the Water Department of the City of Meriden. Stempien also sought to speak to David Lohman, assistant director of water operations, who sent word back to Stempien through Ms. Bentley that he would have to speak to the City's legal department.
Graham and Lohman both contacted Deputy City Attorney Christopher Hankins to inform him of Stempien's attempts to speak with them regarding this litigation. Hankins then prepared a CT Page 12828 letter which he faxed to Stempien, telling him to stop contacting City of Meriden employees. When Stempien insisted that he had done nothing improper, the City filed this motion seeking sanctions against him.
Stempien does not deny that he attempted to make any of the contacts in question. He appears to claim, however, that by disclosing the names of Masse and Amentea as "expert" witnesses for the plaintiff, he somehow immunized himself from the application of Rules 4.2 and 4.3. He further claims that most, if not all, of the information he was seeking was public information governed by the Freedom of Information Act (FOIA), General Statutes § 1-7, et seq., and that those rules similarly do not apply to his efforts to obtain such information. Finally, he maintains that he did disclose his representation of the plaintiff and his purpose in calling Masse, Amentea, Bentley and Graham.
As a threshold matter, Stempien questions whether the court has authority to impose sanctions for violations of Rules of Professional Conduct in the context of pending litigation. He appears to suggest that such claims are best left to our system of grievance panels.
"The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys." Bergeron v. Mackler, 225 Conn. 391, 397,623 A.2d 489 (1993). "Since October, 1986, the conduct of attorneys has been regulated also by the Rules of Professional Conduct, which were approved by the judges of the Superior Court and which superseded the Code of Professional Responsibility." Id. "Judges of the Superior Court possess the `inherent authority to regulate attorney conduct and to discipline members of the bar.' Heslin v. Connecticut Law Clinic of Trantolo Trantolo,190 Conn. 510, 523, 461 A.2d 938 (1983). `It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline.' Id., 524." Statewide GrievanceCommittee v. Rozbicki, 211 Conn. 232, 238, 558 A.2d 986 (1989).
General Statutes § 51-90, et seq., and Practice Book 27B, et seq., [which deal with the Statewide Grievance Committee and local grievance panels] "are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. " CT Page 12829State v. Peck, 88 Conn. 447, 457, 91 A. 274 (1914). In short, when behavior violative of the Rules of Professional Conduct is brought to the attention of the court in connection with pending litigation, the court has the authority to impose appropriate sanctions.
Having determined that this court has authority to impose sanctions, it must then determine whether Stempien's conduct violated one or more of the Rules of Professional Conduct.
Rule 4.2 of the Rules of Professional Conduct provides:
 In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
The purpose of this rule "is to preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer. The rule is designed to prevent situations in which a represented party may be taken advantage of by opposing counsel." Pinsky v.Statewide Grievance Committee, 216 Conn. 228, 236, 578 A.2d 1075
(1990).
None of the individuals contacted by Stempien are actually parties to this litigation. The City alleges, however, that Masse, Graham and Lohman are employees with managerial responsibilities; that although not a managerial employee, Amentea has authority to bind the City; and that Stempien was obligated to inform Bentley of his role in pending litigation against the City even though she has neither managerial nor binding authority. The City presented affidavits from Masse, Graham and Lohman to the effect that they have managerial responsibilities. Stempien presented no affidavits in opposition on this point, but contended that because Masse is an elected official, she cannot be viewed as a managerial employee. The affidavits presented do not clearly identify Amentea's status either with respect to managerial authority or authority to bind the City.
Rule 4.2 does not specify which employees have "party status" within an organization. See Dubois v. Gradco Systems, Inc.,136 F.R.D. 341, 343 (D. Conn. 1991). However, the comments to the CT Page 12830 Rule provide, "[i]n the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." Comments to Rule 4.2, and see CarrierCorp. v. Home Insurance Co., 6 Conn. L. Rptr. 3, 4 (February 11, 1992, Schaller, J.); Dubois v. Gradco Systems, Inc., supra, 343.
Rule 4.2 is similar to Disciplinary Rule 17-104(A)(1) of the Code of Professional Responsibility. Carrier Corp. v. HomeInsurance Co, supra. 4. "If the . . . employees . . . could commit the corporation because of their authority as . . . employees or for some other reasons the law cloaks them with authority, then they, as the alter egos of the corporation, are parties for the purposes of DR 7-104(A)(1)." ABA Informal Opinion 1410 (February 14, 1976).
At a minimum, Masse, Lohman and Graham fall within the categories described in the commentary to the Rule. It is undisputed that the City's council did not authorize Stempien's contact with them. Stempien's claim, however, is that even absent such consent, he was "authorized by law" to initiate these contacts.
With respect to Masse (and also to Amentea) Stempien appears to claim that by disclosing them as "expert"[1] witnesses for the plaintiff, he becomes free to contact them as he sees fit, irrespective of their "party status". He provides no authority whatsoever for this intriguing proposition, nor has this court been able to find any. The mere disclosure of an employee of an opposing party does not exempt the party disclosing that witness from the requirements of the Rules of Professional Conduct.
Stempien also argues that because his opposing party in this case is a municipal corporation subject to the Freedom of Information Act, the provisions of that Act, and its bias in favor of disclosure, somehow trump the Rules of Professional Conduct and exempt him from the requirements of those rules.
General Statutes § 1-19 provides that ". . . all records maintained and kept on file by any public agency, whether or not such records are required by any law or by any regulation, shall CT Page 12831 be public records and every person shall have the right to inspect such records during regular or business hours or retrieve a copy of such records in accordance with the provisions of §1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. " That section exempts only personnel, medical or similar files and the release of information that would constitute an invasion of the subject's privacy. See JudicialCommittee v. Freedom of Information Commission, 39 Conn. Sup. 176,473 A.2d 1248, 1252 (1983). "Construction of the Freedom of Information Act must be guided by a policy favoring disclosure, and exemptions to disclosure must be narrowly construed." Giffordv. Freedom of Information Commission, 227 Conn. 641, 651;631 A.2d 252, 258 (1993).
Neither party has offered any authority that purports to answer this question: "Does the policy in favor of disclosure, embodied in the Freedom of Information Act, eliminate the requirement that attorneys acting on behalf of parties engaged in litigation against a municipal corporation comply with the requirements of Rules of Professional Conduct § 4.2 and 4.3 regarding consent of opposing counsel before initiating contact with employees who have `party status' and requiring them to disclose the nature of their representation before speaking with any employee of the municipality?" Put another way, is this a situation in which the Rule itself excuses noncompliance because the contact is "authorized by law".
At the outset, it should be noted that Stempien claims that all of the information in fact obtained from City employees was basic Freedom of Information material. The City has neither acknowledged nor rebutted this claim.
Although the purposes behind the Freedom of Information Act and the Rules of Professional Conduct are different, they are not incompatible, and the statute and Rule are easily reconciled; they both apply. Assuming, arguendo, that the information sought by Stempien was of such a nature that its disclosure was required by the Freedom of Information Act, and if Stempien had sought the consent of the City's attorneys to seek information available to him under the Freedom of Information Act in connection with pending litigation, that consent could not have been withheld. Nevertheless, the City's attorneys would have been in a position to advise its employees as to the nature of the litigation and to CT Page 12832 respond to any of their inquiries as to how to respond to questions and as to whether the information sought was indeed subject to the Act's provisions. It was improper for Stempien to contact City employees in search of information relevant to the pending litigation without obtaining prior consent of counsel despite the fact that the information sought may have been disclosable pursuant to the Act. It does no violence whatever to the principles behind the Freedom of Information Act to require that an attorney seeking such information also abide by the rules that govern the conduct of his profession.
Independent of the provisions of Rule 4.2, an attorney must still comply with Rule 4.3 when contacting nonparty employees and former employees of an organization which is a party to an action. See Dubois v. Gradco Systems, Inc., supra, 347. "In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested, when the lawyer knows or reasonably should know that the unrepresented party misunderstands the lawyer's role in the matter. The lawyer shall make reasonable efforts to correct the misunderstanding." Rules of Professional Conduct, Rule 4.3.
On this issue, the court has only the affidavits of Stempien and of the employees in question, and these affidavits are in conflict. It is, however, fair to conclude from these affidavits at least that there was a misunderstanding on Bentley's part as to the precise nature of Stempien's inquiry, and under our Rules of Professional Conduct, the burden is upon the attorney to clarify any such misunderstanding. By failing to be absolutely clear about his purpose, Stempien was in violation of Rule 4.3.
Stempien's contact with Masse, Graham, Lohman, Bentley and Amentea therefore violates our Rules of Professional Conduct. The court believes, however, that Stempien's violations were an outgrowth of his ignorance of the implications of those Rules, rather than a willful violation of them. They also reflect a misguided reliance on the Freedom of Information Act.
Throughout his memorandum of law, Attorney Stempien argues that there should be no sanctions of any kind because there has been no information disclosed that would not have been available to him under the Freedom of Information Act, a situation which he abbreviates as "no harm, no foul". While there may have been no harm, however, there was a foul, and limited sanctions are in CT Page 12833 order. Nevertheless, in light of the fact that the information obtained would have been available through proper channels if Stempien had followed the Rules of Professional Conduct, the more severe sanctions sought by the City should not be imposed.
The court therefore orders that the plaintiffs' counsel be enjoined from any contact of any kind with any City of Meriden managerial employees as well as any other employees who are in a position to make admissions or any other way to bind the City, without express prior written consent from an attorney of the City of Meriden, Department of Law. In addition, Stempien shall have no contact of any kind with any past or present City employee relative to this case without having disclosed to such employee in writing the name and nature of this litigation and his role in it. The plaintiffs shall, no later than December 15, 1995, pay the defendant the sum of $250, representing its reasonable attorney's fees incurred in the litigation of this issue.
Jonathan E. Silbert, Judge